EASTERN TEXAS R. CO. et al. v. RAILROAD COMMISSION OF
TEXAS et al.

GULF, T. & W. RY. CO. et al. v. SAME.

(District Court, W. D. Texas, Austin Division. April 20, 1917.)

No. 295.

1. CARRIERS ⊜18(6)—REGULATION OF RATES—ENJOINING ENFORCEMENT.
   Where the Interstate Commerce Commission prescribed maximum
   rates between Shreveport, La., and points in Texas, prohibited the charg-
   ing of rates between such points higher than those applied for like dis-
   tances between points in Texas, and ordered the railroad companies to
   cease applying the classification provisions then maintained to trans-
   portation between points in Texas, and a compliance therewith by the
   railroad companies would subject them to a multiplicity of suits by the
   State Railroad Commission and by shippers for failure to comply with
   the rates prescribed by the State Railroad Commission, while noncom-
   pliance therewith would also subject them to a multiplicity of suits with
   liability to large penalties, they were entitled to a temporary injunction
   restraining the State Railroad Commission and shippers who were threat-
   ening suit from instituting any suits, pending an action for a permanent
   injunction, based on the failure of the railroad companies to comply with
   the state rates so far as in conflict with the rates prescribed by the In-
   terstate Commerce Commission.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24.]

2. COMMERCE ⊜88—INTERSTATE COMMERCE COMMISSION—ORDERS—COLLATER-
   AL ATTACK.
   An order of the Interstate Commerce Commission prescribing interstate
   rates, and incidentally prohibiting intrastate rates thought to be dis-
   criminatory, cannot be attacked collaterally.
   [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141.]

3. INJUNCTION ⊜151—APPLICATION FOR TEMPORARY INJUNCTION—SCOPE OF
   INQUIRY.
   On an application to the District Court for a temporary injunction re-
   straining a State Railroad Commission and others from bringing suits to
   enforce rates prescribed by such commission so far as in conflict with
   an order of the Interstate Commerce Commission, heard before three
   judges, it was not necessary for the court to decide upon the merits of
   the case, but only to determine if the bill presented a case for equitable
   relief, especially where proceedings were still pending before the In-
   terstate Commerce Commission affecting certain of the rates.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 336.]

Suits by the Eastern Texas Railroad Company and others against
the Railroad Commission of Texas and others; and by the Gulf, Tex-
as & Western Railway Company and others against the same defend-
ants. On motion for a temporary injunction. Injunction granted.

J. W. Terry, of Galveston, Tex., H. M. Garwood, of Houston, Tex.,
Hiram Glass, of Austin, Tex., and A. H. McKnight, of Dallas, Tex.
(T. J. Freeman, of New Orleans, La., S. B. Dabney, of Houston, Tex.,
C. C. Huff and E. B. Perkins, both of Dallas, Tex., E. B. Parker, of
Houston, Tex., George Thompson, of Ft. Worth, Tex., and Frank
Andrews, of Houston, Tex., of counsel), for plaintiffs.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Luther Nickels and C. M. Cureton, Asst. Attys. Gen., of Texas (B. F. Looney, Atty. Gen., of Texas, and S. C. Rowe, of Ft. Worth, Tex., of counsel), for defendants.

Blackburn Esterline, Sp. Asst. U. S. Atty. Gen., for the United States.

Joseph W. Folk, of Washington, D. C. (Charles W. Needham, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Wylie M. Barrow, Asst. Atty. Gen., of Louisiana, for intervener Railroad Commission of Louisiana.

S. H. Cowan, of Ft. Worth, Tex., and N. A. Stedman, of Austin, Tex., for Dallas Freight Bureau and Ft. Worth Freight Bureau.

· Paul Kayser, of Houston, Tex. (Huggins & Kayser, of Houston, Tex., of counsel), for interveners Houston Chamber of Commerce and others.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

PARDEE, Circuit Judge. This suit grows out of an order of the Interstate Commerce Commission of July 7, 1916, made and entered in five consolidated cases, entitled: Railroad Commission of Louisiana v. Aransas Harbor Terminal Railway Company et al., docket No. 8418; Railway Commission of Louisiana v. St. Louis Southwestern Railway Company et al., docket No. 3918; Railroad Commission of Louisiana v. St. Louis, San Francisco & Texas Railway Company, docket No. 8290; Eastern Class Rates Investigation and Suspension, docket No. 710; and Class Rates to Shreveport, Louisiana, Investigation and Suspension, docket No. 729.

The order in question is very lengthy and not necessary to give in full. A large part of the order relates to the discrimination then practiced between Shreveport, La., and all points in Texas, and provides for discontinuance of this discrimination, and elaborately provides for maximum rates between Shreveport and all points in Texas, and orders defendants to establish on or before November 1, 1916, on notice to the Interstate Commerce Commission and the general public by not less than 30 days of filing, rates in accordance with the orders of the commission.

The tenth, eleventh, and twelfth paragraphs of the order are particularly pertinent on this hearing. They are as follows:

(10) It is further ordered, that said defendants be, and they are hereby, notified and required to establish, on or before November 1, 1916, upon like notice, and thereafter to maintain and apply to the transportation of property between Shreveport, La., and points in the state of Texas, class rates and rates on the above-named commodities not in excess of those contemporaneously applied by them for the transportation of like property for like distances between points in the state of Texas, except in those instances in which the rates between Texas points have been depressed by reason of water competition along the Gulf of Mexico or waters contiguous thereto.

(11) It is further ordered, that said defendants be, and they are hereby, notified and required to cease and desist, on or before November 1, 1916, and thereafter to abstain, from maintaining and applying to the transportation of property between points in Texas the classification provisions at present maintained and applied to such transportation.

(12) It is further ordered, that said defendants be, and they are hereby, notified and required to establish on or before November 1, 1916, upon like

notice, and thereafter to maintain and apply to the transportation of property between points in Texas, the provisions of the current western classification in effect at the time such traffic moves.

Preparatory to filing tariffs in compliance with the commission's order of July 7, 1916, the carriers representing 80 per cent. of the railroad mileage in the state of Texas and affected by the order of July 7, 1916, filed their bill in this court on September 4, 1916, for an injunction, joining as parties defendant the Railroad Commission of Texas, together with its individual members, the Attorney General of the State of Texas, and certain Texas shippers, reciting the proceedings before the Interstate Commerce Commission and the necessity they were under to comply, and their intention to comply, with the order of said commission; and then alleging, in substance, that the tariffs to be filed in accordance with the order of the Interstate Commerce Commission would necessarily conflict with the tariffs heretofore established by the Railroad Commission of Texas, which under the laws of Texas they were compelled to observe and comply with under heavy penalties, at the suit of the Attorney General of Texas or of individual shippers, that the defendants were claiming that the order of the Interstate Commerce Commission of July 7, 1916, was void, and were threatening to institute suits for damages and penalties under the Texas laws should the carriers comply with the said order of the Interstate Commerce Commission; and the complainants prayed for a temporary restraining order, an injunction pendente lite, and a perpetual injunction.

To this bill is attached the following order:

The foregoing application for a temporary injunction and temporary restraining order, to remain in force until the hearing of the said application for a temporary injunction can be heard and determined, was presented to me this 2d day of September, A. D. 1916, and it was shown that the Honorable T. S. Maxey, United States District Judge for the Western District of Texas, is absent from said district, and for that reason is unable to hear and act upon said application; and having read and considered the foregoing bill, it is ordered that the same be filed and that the application for a hearing for a temporary injunction is granted and such hearing is set down for September 28, 1916, at my chambers in the city of Atlanta, Georgia, at 10 o'clock a. m. That immediate notice of said hearing, of not less than five days shall be given to the Governor and the Attorney General of Texas and to the defendants. And I hereby call to my assistance at said hearing of said application the Honorable Richard W. Walker, Circuit Judge of this circuit, and the Honorable William T. Newman, District Judge of the Northern District of Georgia.

It being further shown, and it is my opinion, that irreparable loss and damage will result to complainants unless a temporary restraining order is granted, it is ordered that such temporary restraining order is granted, and the clerk of the District Court for the Western District of Texas is ordered and directed to issue a temporary restraining order as prayed for restraining the Railroad Commission of Texas, the Attorney General and others with notice, from filing and prosecuting suits against the plaintiffs or either of them for failure or refusal to put in effect circular No. 5060 of the Railroad Commission of Texas, dated August 28, 1916, until such time as the application for temporary injunction can be heard and determined, and the said temporary restraining order issued by said clerk shall restrain and prevent the Railroad Commission of Texas, the Attorney General of Texas and the other defendants hereto, and others with notice, from filing and prosecuting suits

against the plaintiffs or either of them for damages or penalties, for charging by them, on and after November 1, 1916, the rates prescribed and authorized by the Interstate Commerce Commission in its order of July 7, 1916, on shipments moving between points in the state of Texas, and such temporary restraining order as prayed for to remain in force until the hearing and determination of the application for an interlocutory or temporary injunction upon notice as aforesaid.

This September 2, A. D. 1916, at Atlanta, Georgia.

                                      Don A. Pardee, U. S. Circuit Judge.

The hearing on the question of an injunction pending the suit was postponed by consent from time to time until April 4, 1917, in New Orleans, La., when the matter came on for hearing before Pardee, Circuit Judge, who issued the order to show cause, and Walker and Batts, Circuit Judges, called to assist under provisions of section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1916, § 1243]).

Upon this hearing a large amount of evidence was introduced on both sides, consisting of subsequent pleadings in the case, affidavits, proceedings before the Interstate Commerce Commission, all as shown by the procès verbal hereto attached. The pleadings subsequent to the entry of the temporary restraining order herein are an amendment to the original bill, a supplemental bill by the complainant showing that tariffs and rates had been filed under the order of the Interstate Commerce Commission and were in force, a very lengthy and argumentative answer, by the Railroad Commission of Texas and the Attorney General of Texas, substantially denying all the allegations of the original bill and contending that the order of the Interstate Commerce Commission of July 7, 1916, was void, and, if not void, voidable in whole or in part; and further answering in the nature of a cross-action, contending and asserting that the order of July 7, 1916, was void, and that the United States and the Interstate Commerce Commission are necessary parties; and ended with the prayer that the plaintiffs be denied all relief herein and defendants have judgment and costs; and, further, on the final hearing, said order of the Interstate Commerce Commission be annulled and wholly set aside.

To this answer the complainants filed a general and special replication, and, said answer having been served upon the United States and the Interstate Commerce Commission, each made a limited appearance by attorneys contesting the jurisdiction as against them.

It further appeared that 28 other railroads, wholly situated in the state of Texas and not original parties to the suit, filed their petition of intervention, joining the complainants in the original bill and adopting the allegations and prayers therein, and further showing that they had filed tariffs under the order of July 7, 1916, and further alleging that on the 14th day of October, 1916, the state of Texas, acting through her Attorney General, filed a suit in the district court of Travis county, state of Texas, against these interveners and other railway companies, wherein the state of Texas sought to enjoin the defendants from charging on and after November 1, 1916, higher rates than those prescribed by the Railroad Commission of Texas and from using any classification other than those prescribed by the Railroad

Commission of the state of Texas; that they therein appeared and pleaded, setting up the proceedings before the Interstate Commerce Commission the order of July 7, 1916, that they had filed with the Interstate Commerce Commission tariffs in compliance with the order of said commission, the bill of complaint in this cause, and the restraining order issued thereon, and the filing of the answer of the Railroad Commission, etc.; that, on the hearing of the application for a temporary injunction in said cause, all of the facts alleged in said pleas to the jurisdiction were established by competent proof and were uncontradicted; and thereafter said court entered an order undertaking to restrain these interveners from charging higher rates than the rates prescribed by the Railroad Commission of Texas and from using or applying to shippers between points in the state of Texas any classification other than the classification prescribed by the Railroad Commission of the State of Texas; and also granting a writ of mandamus, etc.; and that an appeal was taken from the said orders which is now pending; and the interveners concluded with a prayer for a restraining order and injunction, etc.

It appears by the proof on this hearing that subsequent proceedings have been and are now pending before the Interstate Commerce Commission in the said consolidated causes, and that on the 26th of January, 1917, pursuant to a petition filed by the Attorney General of Texas and by various localities and commercial interests of Texas the commission entered a supplemental report and order in Railroad Commission of Louisiana v. Aransas Harbor Terminal & Railway Company et al., in which the proceedings in the five consolidated cases were reopened and leave was granted to the Attorney General of Texas and the Railroad Commission of Texas to intervene in a supplementary order as follows:

Upon consideration of various petitions filed in the above-entitled proceedings asking that they be reopened for further hearing and argument and of the oral argument had therein, it is ordered that these proceedings be and they are hereby reopened for further hearing; and it is further ordered that pending such hearing or hearings and decisions thereon the order of July 7, 1916, herein shall remain in full force and effect.

[1] From the foregoing, it clearly appears that the complainant carriers both in the original bill and the intervention are in jeopardy. If they fully comply with the order of the Interstate Commerce Commission and put in force the tariffs authorized by that body, they will be subject to a multiplicity of suits by the Railroad Commission of Texas and by shippers involving heavy and even confiscatory penalties. If, on the other hand, they do not comply with the order of the Interstate Commerce Commission, but do comply with the orders made and tariffs prescribed by the Railroad Commission of Texas, they will be subject to a multiplicity of suits with liability to be mulct in very large penalties.

It seems clear that they are entitled to the protection of the court. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Wadley Southern Railway v. Georgia, 235 U. S. 651, 35 Sup. Ct. 214, 59 L. Ed. 405.

[2] We assume that the order of July 7, 1916, involved herein is valid (Houston & Texas Cen. Ry. v. United States, 234 U. S. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341), and the validity thereof can only be attacked directly; and, whether it is properly in issue in this case, and whether the court has jurisdiction (see 38 Stat. at L. 219), can only be decided upon the trial thereof. It certainly cannot be attacked collaterally in any case.

[3] The issues made herein in regard to certain specific rates published in tariff promulgated under order of July 7, 1916, and whether or not such rates are unreasonable or discriminatory or otherwise illegal, are now pending before the Interstate Commerce Commission, the only body competent to originally pass upon the same. Certainly, at this time, we are not called upon to decide upon the merits of the case. On the hearing before this special tribunal, it seems that we are not called upon to try or decide any of the questions presented upon the pleadings further than to determine if the bill itself as amended presents a case for equitable relief. On this issue enough has been stated to show that the complainants are entitled to such relief, and we find on the facts proved that the protection of the complainants requires the issuance of a temporary injunction substantially as prayed.

And it is so ordered.

BATTS, Circuit Judge (concurring). In a proceeding initiated in 1911 by the Railroad Commission of Louisiana against the Houston East & West Texas Railroad Company, the Houston & Shreveport Railroad Company, and the Texas & Pacific Railway Company, the Interstate Commerce Commission held that the named carriers maintained higher rates from Shreveport to points in Texas than were in force from cities in Texas to such points under substantially similar conditions and circumstances, and that thereby unlawful and undue preference and advantage was given to the Texas cities, and undue and unlawful discrimination against Shreveport, La., was effected. To correct this discrimination, the carriers were directed to desist from charging higher rates for the transportation of any commodity from Shreveport to Dallas and Houston, respectively, and intermediate points, than were contemporaneously charged by the carriers for such commodities from Dallas and Houston toward Shreveport, for equal distances. This order was attacked in a suit instituted by the carriers in the Commerce Court. The order was sustained by that court, and an appeal was taken to the Supreme Court.

The Supreme Court held (234 U. S. p. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341) that: (1) Congress has the power to regulate rates within the state for transportation carried on by instrumentalities of interstate commerce, or where intrastate business would affect interstate commerce. (2) Congress has not undertaken, directly or through the agency of the Interstate Commerce Commission, to make rates for the transportation of passengers or property wholly within one state, and not affecting interstate traffic. (3) Where the observance by the carrier of the state-made rate constitutes a violation of the provision of the Interstate Commerce Act prohibiting unreasonable and unjust

discrimination, or undue preference or advantage, Congress has, with reference thereto, exercised its power. (4) Where unjust discrimination or undue and unreasonable preference or advantage is charged, it is a matter primarily for investigation and determination by the Interstate Commerce Commission. (5) Where the Interstate Commerce Commission has held that interstate rates charged by carriers are reasonable, and that the observance by the carriers of state-made rates, affecting the same locality, is an illegal discrimination, the carrier may comply with the order of the Interstate Commerce Commission by so adjusting the state rates as to remove the discrimination.

After the rendition in 1913 of the opinion by the Supreme Court of the United States, the order of the Interstate Commerce Commission was enlarged to affect the rates of all common carriers within Eastern Texas, and, subsequently, further enlarged to include the entire state. The order also fixed the interstate rates between Shreveport and Texas points, and required the use, with reference to Texas business, of the western classification, in lieu of the classification prescribed by the Railroad Commission of Texas.

Being required under the order to adjust their intrastate rates to the Shreveport rates established by the commission, the railroads prepared rate sheets and tariffs, which they claimed to be in conformity with the order, and filed them with the commission.

Pending the determination of the proceedings before the Interstate Commerce Commission, hearings were held by the Railroad Commission of Texas upon an application of the railroad companies for an increase of intrastate rates, and orders were issued by the Railroad Commission, making a number of increases, which were to have become effective September 1, 1916. Upon the filing with the Interstate Commerce Commission of the rate sheets by the Texas railroad companies, the Texas Railroad Commission, without notice, canceled the orders increasing the Texas rates. Thereupon plaintiffs instituted this suit in the Western district of Texas, setting up in detail the facts hereinbefore mentioned. The bill also averred that all the rates, orders, and classifications of the Railroad Commission of Texas were unreasonable and confiscatory. It was alleged that, unless protection was given by injunction, plaintiffs would be subjected to many suits for penalties by the state of Texas and by shippers, for obeying the orders of the Interstate Commerce Commission.

The District Judge not being accessible, application was made to Hon. Don A. Pardee, Circuit Judge, for the temporary injunction now under consideration. A restraining order was made, and the application set down for a hearing. Delays resulted from the concurrent action of the parties, and the application is now submitted to Circuit Judge PARDEE, and Circuit Judge WALKER, and the writer, whom he has called to his assistance, under the terms of the law.

In the meantime, the action of the Railroad Commission of Texas, in undertaking to cancel its orders increasing rates, was abrogated by that body. Also in the meantime, upon applications made by the Attorney General and the Railroad Commission of Texas, the Interstate Commerce Commission had reopened the case referred to and has made provision for hearing additional testimony, refusing, however, to suspend the rates established, pending final action.

The Attorney General and Railroad Commission of Texas have in this case answered, and have filed a cross-action, asking for the cancellation of the order of the Interstate Commerce Commission.    To this cross-bill, the Interstate Commerce Commission and the United States have filed pleas to the jurisdiction.

In the submission of this application the parties have filed transcripts of the records in the several hearings before the Interstate Commerce Commission, of the hearing extending over many weeks before the Railroad Commission of Texas, and many affidavits.    It would probably not be possible for all this testimony to be read in less than two or three months.    The application may be disposed of without delay, which would be inconsistent with the purpose of the law to expedite cases of this character.

If the rates from Texas points to Shreveport are reasonable, and if the application of the rates made by the Railroad Commission of Texas to points within Texas constitutes unjust discrimination against Shreveport, the Texas-made rates are invalid.    Under the terms of the Interstate Commerce Commission Act, the railroads of Texas may be prosecuted for charging the Texas rates.    This results entirely without reference to any action which may be taken or which may have been taken by the Interstate Commerce Commission.    The Texas railroads are entitled to protection against contemplated state action, which would result from their failure to violate the law.

The Interstate Commerce Commission has established the Texas-Shreveport rates.    These rates must be regarded as reasonable until set aside in the manner provided by law.    The Interstate Commerce Commission has declared that the use of the Texas rates will constitute a discrimination against Shreveport.    This commission is one of the agencies designated by the law for the purpose of primarily determining whether a discrimination exists.

The law evidently contemplates that, when the Interstate Commerce Commission shall have made an order, it is ordinarily to be obeyed until that order is set aside in the manner indicated by the law.

Whether this rule is universal in its application it is not necessary in this proceeding to determine.    The Supreme Court has held that the commission may determine what is a reasonable interstate rate, and what rate must be charged on intrastate business to prevent a discrimination, when both rates are in use.    But the authority of the Interstate Commerce Commission with reference to intrastate rates is purely incidental and remedial.    The qualities of such an order are radically different from those of an order resulting from the exercise of the legislative function involved in rate-making.    To hold that it may, under any circumstances, regulate a state rate, is to carry the rules of interpretation to the extreme limit, in view of the proviso in the first section of the Interstate Commerce Commission Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [Comp. St. 1916, § 8563]).    It may be held that it has the power to make such orders affecting intrastate rates as are necessary to prevent discrimination; certainly, the authority will not go beyond the necessity.    When the Interstate Commerce

Commission acts with reference to such a matter, it makes, or should make, the same character of investigation and the same character of determination that would be made by a court if a carrier charging the intrastate and the interstate rates were prosecuted for a violation of the Interstate Commerce Commission Act. Its action would be more nearly judicial than legislative. Whenever such an order is under consideration by a court, the court would have to determine whether the jurisdiction of the Interstate Commerce Commission had been exceeded; and it would doubtless decline to apply the same rules with reference to the conclusiveness of the action of the Interstate Commerce Commission that obtain when that body is, in the exercise of its established legislative authority, making rates. It would not permit the Interstate Commerce Commission to conclusively determine its jurisdiction by determining the fact of the discrimination upon which its jurisdiction would depend.

The order under investigation in this case is exceedingly comprehensive. It breaks down the intrastate rates of the state of Texas. These rates have not been held unreasonable. They are the result of many years of labor by an authorized rate-making body. They have, until the Interstate Commerce Commission acted, been acquiesced in by the railroads. Some of the rates which have been set aside could not have had an appreciable effect on the commerce of Shreveport, or any interstate commerce. Affidavits on file in this court indicate that, in some instances, the results of the order are disastrous to industries within the state. In other instances, the effects are grotesque. No reason has been made to appear why it is necessary to supersede the Texas classification in order to prevent discrimination.

But the order is. It may be that it has been improvidently made. It may be that parts of it are invalid. It may be that when this case is finally tried it will be set aside in whole or in part. But it is not possible for us to hold the order void. A part of it has already been passed upon by the Supreme Court of the United States, and has by that tribunal been declared valid.

The opinion of the Supreme Court is vigorously attacked. In capable, well-considered opinions, the state courts of Texas and South Dakota have declined to follow the opinion until reannounced. It is the obligation of the state courts, as it is the duty of the federal courts, to vigilantly maintain the rights of the states, and to carefully determine the authority of federal agencies exercising powers claimed to be in derogation of those rights. It is not surprising that state courts should be reluctant to follow an opinion which adds vastly to the power heretofore assumed to be in the Interstate Commerce Commission, and which destroys the power which has been assumed to be in the state rate-making bodies.

In the Minnesota Rate Case, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18, there is unequivocal recognition of the right of the states to make intrastate rates. In the Shreveport Case, 234 U. S. p. 358, 34 Sup. Ct. 833, 58 L. Ed. 1341, the right of the Interstate Commerce Commission to enter an order affecting intrastate rates "where interstate commerce itself is in-

volved," is as definitely expressed. In the oral submission of this case, the representative of the Interstate Commerce Commission suggested the intimate relationship between all intrastate and all interstate business, and made it easy to see how the commission could supersede the state rates in every state, as it had in Texas, and nullify the congressional declaration that the provisions of the act which created the commission "shall not apply to the transportation of passengers or property wholly within one state."

That Congress could make all railroad rates, or delegate the making to a commission, is not, under the authorities, seriously to be questioned. That it has not exercised this power is made clear by the Minnesota Rate Case; that it has given authority to the Interstate Commerce Commission, which indirectly and awkwardly accomplishes the same result, would seem to be the commission's interpretation of the Shreveport Case. But even if the commission's application of the opinion is too broad, the language of the Supreme Court justifies a part, at least, of the order, and warrants and requires the protection we give the railroad companies.

It has been made to reasonably appear that, but for the restraining order heretofore made, the railroads of Texas would have been subjected to numerous and destructive suits for penalties, for the collection of overcharges, and for infractions of the Texas Railroad Commission law. But for this judicial action, their obedience to the order of the Interstate Commerce Commission would have been destructive of their property rights. If they had not obeyed the Interstate Commerce Commission's order, they would have been subjected to the danger of suits and prosecutions by the United States government. Those conditions continue, and would seem to peculiarly demand the interference of the judiciary. It may be the issuing of the injunction will not be without injury to individual shippers, and to localities and industries. It is much to be regretted that all of the unfortunate consequences of conflicting laws cannot be avoided. The issuance of the injunction which is to be entered herein will, it is hoped, be the action least productive of disastrous effects.

The granting of the injunction prayed for by the railroads necessarily carries with it the refusal to grant a temporary injunction to the defendants. A serious question exists as to whether or not their cross-bill can be entertained in this suit. It is an attack upon an order of the Interstate Commerce Commission, and the law provides that it shall be instituted in the District Court of the residence of the party at whose instance the order was made. It may be that, under the facts of this case, jurisdiction would lie only in the Western District of Louisiana. In addition to fixing the venue of suits of this kind, the law contemplates that the order setting aside the action of the Interstate Commerce Commission should be determined by a court of three judges.

It is certainly not contemplated that, in passing upon an application for a temporary injunction, the merits of a case which would require weeks for a proper trial, and the merits of a cross-bill which would require as long a time for disposition, should be considered and

determined. The purpose of a temporary injunction is to protect rights, as far as possible, during the period necessary for the proper disposition of the case. Sometimes such an injunction necessarily involves the merits of a case. We have not considered it necessary or desirable that present adjudication of the matters involved in this case should be undertaken. In addition to reasons suggested heretofore, the whole rate situation in Texas is yet before the Interstate Commerce Commission, and a satisfactory solution of the difficulties which have appeared may be reached. The order entered herein is not intended to adjudicate any of the issues made by the pleadings, but merely to maintain a status which will result in a minimum of harm.