Merle D. VINCENT, Jr., Regional Director of the Third Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL NO. 118, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, Respondent.

Civ. No. 7453.

United States District Court
W. D. New York.

Dec. 27, 1957.

Leroy W. C. Mather, Washington, D. C., James J. McHugh, New York City, for National Labor Relations Board.

Harris, Beach, Keating, Wilcox & Dale, Rochester, N. Y., for Scobell Chemical Co., Inc.

Scully, O'Brien & McDermott, Rochester, N. Y., for respondent.

BURKE, Chief Judge.

The Union opposes a preliminary injunction on the ground that it has a contract containing a "hot cargo" clause with each of the carriers, whose employees the Union has induced and encouraged to refuse to handle Scobell's freight, and that because of such contracts its conduct in that respect is exempt from the provisions of Section 8(b) (4) (A, B). 29 U.S.C.A. § 158(b) (4) (A, B). The Union stresses that, unlike Douds v. Milk Drivers and Dairy Employees Union, 2 Cir., 248 F.2d 534, all the carrier employers in the case at bar acquiesced in the actions of the Union. The argument necessarily implies that his court should deny preliminary injunctive relief by holding on this motion that the contracts containing such "hot cargo" clauses are legal and that their effect is to make the Union's conduct legal and not in violation of the statute. The Court of Appeals in Douds v. Milk Drivers, supra, pointed out (at page 537) the limited function of the District Court on a motion for preliminary injunction:

> "The District Court was not required to make final or even preliminary findings as to the truth or falsity of the facts alleged in the petition of the Director. By the terms of Sec. 10(*l*) the Court's function is limited to ascertaining whether the

Director could have 'reasonable cause to believe' that the charges filed were true and to granting such equitable relief 'as it deems just and proper.' "

The evidence establishes that the petitioner had reasonable cause to believe that the Union was engaged in unfair labor practices, within the meaning of the statute. In view of the irreparable damage threatened, a preliminary injunction is appropriate. The question of the validity of the contracts, or their effect, is not before me. That question is fraught with conflict and is likely to be resolved with finality in the near future. The Labor Management Relations Act and The Controversial Hot Cargo Clause, Fordham Law Review, Vol. XXVI, No. 3, page 522. I am not required on this motion, and I therefore decline, to speculate as to how the question will finally be resolved.

Motion for preliminary injunction granted. Findings of fact and conclusions of law are filed herewith.

### Findings of Fact

1. The respondent is a labor organization and is engaged within this judicial district in promoting and protecting the interests of its employee members and transacting business.

2. On or about May 28 and September 18, 1957, Scobell Chemical Company, Inc., filed charges with the National Labor Relations Board, alleging that the respondent has engaged in, and is engaging in, unfair labor practices, within the meaning of the statute. The charges were referred to the petitioner as Regional Director of the Third Region for the Board for investigation, and were investigated by the petitioner through his subordinates.

3. There is reasonable cause to believe, and the petitioner has reasonable cause to believe, that:

(a) Scobell is engaged at Rochester, N. Y., in the wholesale distribution of chemicals and related products. During the past year Scobell sold chemicals valued in excess of $100,000 to various companies, each of which annually ships products valued in excess of $50,000 to points outside the State of New York.

(b) Among the customers to whom Scobell sold its products are: Yawman and Erbe, Photo Color Processing Corporation and Roehlen Engraving Company. Scobell utilized various carriers to transport its products and freight, including Endres Delivery, Inc., Boulter Carting Co., Inc., Mushroom Transportation, Inc. and Penn Yan Express, Inc.

(c) Since about March 29, 1957 respondent has demanded that Scobell recognize and bargain with it as the representative of Scobell's warehouse and truck driver employees, and in connection therewith respondent has been on strike against Scobell and has picketed its premises at Rochester, N. Y., at which Scobell's employees report daily for work for Scobell.

(d) Respondent has not been certified as the representative of Scobell's employees under the provisions of Section 9 of the Act.

(e) In furtherance of its demands, since about May 17, 1957, respondent has followed Scobell's trucks to the premises of various Scobell customers, including Yawman and Erbe, Photo Color Processing Corporation and Roehlen Engraving Company, and has picketed the premises of said customers with picket signs on which appeared "Teamsters Local 118, Picketing Here Against Scobell Chemical Company, Truckers Only, AFL–CIO." In connection with the picketing respondent's pickets requested employees of Scobell's customers not to accept, receive or handle, Scobell's products.

(f) In connection with its dispute with Scobell, respondent, since August, 1957, has orally ordered, directed, instructed, requested and appealed to employees of various motor carriers doing business with Scobell, including Endres Delivery, Inc., Boulter Carting Co., Inc., Mushroom Transportation, Inc. and Penn Yan Express, Inc. to refuse to handle, transport or work on Scobell's products or freight.

As a result thereof employees of said carriers have refused to handle, transport or work on Scobell's freight.

(g) By the above described acts and conduct, respondent has engaged in and induced and encouraged employees of Yawman and Erbe, Color Photo Processing Co. and Roehlen Engraving Company, Endres Delivery, Inc., Boulter Carting Co., Inc., Mushroom Transportation Co., Inc., and Penn Yan Express, Inc. and other employers, to engage in strikes or concerted refusal in the course of their employment to use, manufacture, process, transport or otherwise handle or work on goods, articles, materials, or commodities, or to perform services, in connection with Scobell's goods.

4. The object of respondent's acts and conduct above set forth are to force or require the above named customers of Scobell and the carriers who handle Scobell's freight, and other employers and persons, to cease doing business with Scobell and to force or require Scobell to recognize or bargain with respondent as the collective bargaining representative of Scobell's employees.

5. The acts and conduct of the respondent above set forth have a close, intimate and substantial relation to trade and commerce among the several states and tend to lead to, and do lead to, labor disputes obstructing commerce and the free flow of commerce.

6. It may be fairly anticipated that unless enjoined, respondent will continue said acts and conduct set forth above, or like acts or similar conduct.

### Conclusions of Law

1. There is reasonable cause to believe, and the petitioner has reasonable cause to believe that: (a) respondent has engaged in unfair labor practices, within the meaning of the Act, affecting interstate commerce, and a continuation of such practices will impair the policies of the Act.

2. To preserve the issues for the determination of the Board it is appropriate that, pending the final disposition

before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys and all persons acting in concert or participation with it, be enjoined and restrained from the commission, continuance or repetition of the acts and conduct set forth herein, or like or related acts or conduct.