Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 1291, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Respondent.

Civ. A. No. 28373.

United States District Court
E. D. Pennsylvania.

Aug. 18, 1960.

Clifford M. Roth, N. L. R. B., Washington, D. C., for petitioner.

Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., for respondent.

EGAN, District Judge.

This cause came on to be heard upon the verified petition of Bennet F. Schauffler, Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, (herein called the Act), 29 U.S.C.A. § 160(*l*) pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on August 11 and 12, 1960. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issue, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following

### Findings of Fact.

1. Petitioner is Regional Director of the Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about July 26, 1960, Northern Metal Co. (herein called Northern), pursuant to the provisions of the Act, filed an amended charge to a charge originally filed with the Board on July 14, 1960, said amended charge alleging that Local 1291, International Longshoremen's Association (herein called respondent), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (D), of

the Act, 29 U.S.C.A. § 158(b) (4) (i, ii) (D).[1]

3. The aforesaid charge and amended charge (Case No. 4–CD–51) were referred to petitioner as Regional Director of the Fourth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal offices at Philadelphia, Pennsylvania, and at all times material hereto respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Northern is engaged at Philadelphia, Pennsylvania, in the operation of a warehouse and terminal. In the course and conduct of its business Northern loads for shipment to foreign ports, and receives from foreign ports, motor vehicles, pursuant to contract with the United States Army. During the past year Northern received revenue in excess of $50,000 for services performed under the above mentioned contract.

(d) At all times material hereto, Local 14, Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO (herein called Local 14) has been certified by the Board as the collective bargaining representative of Northern's maintenance and production employees, and a collective bargaining agreement has been in effect between Northern and Local 14, covering the wages, hours and other terms and conditions of employment of said employees.

(e) At all times material hereto, Northern has also had a collective bargaining agreement with respondent covering the employment by Northern of stevedoring gangs for the loading aboard and discharge from ships, of the aforesaid motor vehicles, as well as for the loading and discharge of general and other cargo.

(f) For the performance of its aforementioned contract with the United States Army, since about October, 1951, Northern has assigned to its employees who are members of, or represented by, Local 14, the work of moving the vehicles to and/or from the point where they are taken over or released from "the hook," and has assigned to employees who are members of, or represented by, respondent, the work of loading aboard or discharging from ships motor vehicles while they are being moved by "the hook."[2]

---

1. In the amended charge filed by Northern on July 26, 1960 (G–6) there appears the following

"Basis of the Charge

"On June 19, 1960, and continuing since that time, ILA Local 1291, by refusing to perform any work for Northern Metal Co. unless said company hired gangs composed of 22 men each for the loading or discharging of vehicles aboard or from ships, has forced Northern Metal Co. to hire 22 instead of 15 men gangs 'for such purposes, despite the fact that it has been the practice since 1951, to hire 15 men gangs. This was and is being done in an attempt to force the said Northern Metal Co. to assign to employees who are members of ILA Local 1291 rather than to employees who are members of Industrial Union of Marine and Shipbuilding Workers of America, Local No. 14, the work of moving vehicles from points in Northern Metal's yard to a position alongside the ship, notwithstanding that such work has always been performed by employees who are members of the said IUMSWA, the certified bargaining representative of these and all other production and maintenance employees of Northern Metal Co. (N.L.R.B. Case No. 4–R–2217), with which Northern Metal Co. has a collective bargaining agreement requiring such work to be assigned to employees represented by said union; and despite an agreement made by the said ILA and IUMSWA in 1951 that said work should be performed by employees of IUMSWA."

2. The point on the pier at or near shipside where the hook on the winch or crane falls to pick up or unload cargo.

(g) Since on or about June 19, 1960, respondent has demanded that Northern assign the work of moving motor vehicles to and from the point where they are taken over or released from "the hook," to employees who are members of, or represented by respondent, which work Northern has assigned to employees who are members of, or represented by Local 14, as set forth in Findings of Fact 4(f) above.

(h) In furtherance of its demand referred to in Findings of Fact 4(g) above, since on or about June 19, 1960, respondent has refused to furnish stevedores to Northern both for the loading and unloading of motor vehicles, and for the loading and discharge of general cargo, and has ordered, instructed, directed and appealed to its members and persons represented by it not to work for Northern unless and until Northern assigned to employees who are members of, or represented by, respondent the work of moving vehicles to and from the point where such vehicles are taken over or released from "the hook."

(i) By the acts and conduct of respondent set forth in Findings of Fact 4 (h) above, and by other means, including orders, directions, instruction, requests and appeals, respondent has engaged in, and has induced and encouraged individuals employed by Northern, and by other persons engaged in commerce or in industries affecting commerce, to engage in, strikes or refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials, or commodities or to perform services, and has threatened, coerced and restrained Northern, and other persons engaged in commerce or in industries affecting commerce.

(j) An object of the acts and conduct of respondent set forth in Findings of Fact 4(h) and (i) above, was and is to force and require Northern to assign the work of moving motor vehicles to or from the point where they are taken over by, or released from "the hook," to employees who are members of, or represented by,

respondent, rather than to employees who are members of, or represented by, Local 14, or who are not members of, or represented by, respondent.

(k) The acts and conduct of respondent set forth in Findings of Fact 4(h), (i) and (j) above, occurring in connection with the operations of Northern, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several States and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, respondent will continue and repeat the acts and conduct set forth in Findings of Fact 4(h), (i) and (j) above, or similar or like acts and conduct.

Conclusions of Law.

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Section 2 (5), 8(b) and 10(l) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(l).

(b) Northern is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (D) of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1, 29 U.S.C.A. § 141, thereof.

3. To preserve the issues for orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved. pending before the Board, respondent, its officers, representatives, agents, servants, employees,

attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in Findings of Fact 4(h), (i) and (j) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

### Discussion.

This proceeding is before the Court on a petition filed by the Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S. C.A. § 160(*l*)) (herein called the Act), for a temporary injunction pending the final disposition of the matters involved herein pending before the Board on an amended charge filed by Northern Metal Company (herein called Northern), alleging that respondent has engaged in, and is engaging in, an unfair labor practice within the meaning of Section 8(b) (4), subparagraph (D), of the Act, which section proscribes so-called jurisdictional disputes.

 The petition is predicated on petitioner's conclusion that there is reasonable cause to believe respondent has engaged in the unfair labor practice

charged and that a complaint of the Board based on the charge should issue. The prerequisite to the granting of relief under Section 10(*l*) is a finding by the Court that there is reasonable cause to believe that a violation of the Act has been committed.[3] The ultimate determination of this question has been placed by Congress with the Board, subject to review by the Court of Appeals pursuant to Sections 10(e) and (f) of the Act.[3a] The injunctive relief contemplated by Section 10(*l*), and prayed for in the petition is interlocutory to the final determination of the unfair labor practice issue pending before the Board, and is limited to such time as may expire before the Board renders its final decision.

Northern is engaged at Philadelphia, Pennsylvania, in the business of warehousing and terminal service. In the course of its business, Northern operates a terminal facility and has contracted with the United States Army for the shipment and receipt of motor vehicles to and from foreign ports, for which service Northern received revenue in excess of $50,000 during the past year. Respondent Local 1291, International Longshoremen's Association (herein called respondent), a labor organization.[4] at all times material hereto has been engaged within this judicial district in transacting business and promoting and protecting the interests of the employee members of respondent.[5]

3. Bowles v. Montgomery Ward & Co., 7 Cir., 143 F.2d 38, 42; Colorado Eastern R. Co. v. Chicago, B. & Q. Ry. Co., 8 Cir., 141 F. 898, 901; Sinclair Refining Co. v. Midland Oil Co., 4 Cir., 55 F.2d 42, 45; Northwestern Stevedoring Co. v. Marshall, 9 Cir., 41 F.2d 28, 29; City of Louisville v. Louisville Home Telephone Co., 6 Cir., 279 F. 949, 956; United States v. Parrott, C.C.N.D.Cal., 27 Fed. Cas. pp. 416, 430, 435; Eastern Texas R. Co. v. Railroad Commission, D.C.W.D. Tex., 242 F. 300, 305.

3a. N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Douds v. Wood, Wire & Metal Lathers Ass'n, 3 Cir., 245 F.2d 223; Madden v. International Organization of Masters, Mates & Pilots, 7 Cir., 259 F.2d 312, certiorari denied 358 U.S. 909, 79 S.Ct. 236, 3 L. Ed.2d 229; American Federation of Radio & Television Artists v. Getreu, 6 Cir., 258 F.2d 698; Local 450, International Union of Operating Engineers v. Elliott, 5 Cir., 256 F.2d 630; Douds v. Milk Drivers & Dairy Employees Union, 2 Cir., 248 F.2d 534; Printing Specialties, etc. v. LeBaron, 9 Cir., 171 F.2d 331; United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 170 F.2d 863.

4. Within the meaning of Section 2(5), 8 (b) (4) (i) (ii) (D) and 10(*l*) of the Act.

5. In addition, as will appear hereinafter, the alleged unfair labor practice occur-

As indicated, Northern operates a warehouse and terminal at Philadelphia, Pennsylvania. Northern's maintenance and production employees are represented by Local 14, Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO (herein called Local 14), which union has been certified by the Board as the collective bargaining representative for said employees.

At all times material hereto, Northern has also had a collective bargaining agreement with respondent covering the employment by Northern of stevedoring gangs for the loading aboard and discharge from ships, of the aforesaid motor vehicles, as well as for the loading and discharging of general and other cargo. For the performance of its contract with the United States Army, since about October, 1951, Northern has assigned to its employees who are members of, or represented by, Local 14, the work of moving the vehicles to and/or from the point where they are taken over by or released from "the hook,"[6] and has assigned to employees who are members of, or represented by respondent, the work of loading aboard or discharging from ships motor vehicles while they are being moved by "the hook."

Since on or about June 19, 1960, respondent has demanded that Northern assign the work of moving motor vehicles to and from the point where they are taken over by, or released from "the hook," to employees who are members of or represented by respondent, which work Northern has assigned to its employees who are members of Local 14 as above stated. In furtherance of its said demand, and on or about June 19, 1960, respondent first refused to furnish steve-

dores to Northern both for the loading and unloading of motor vehicles and for the loading and unloading of general cargo, and ordered, instructed, directed and appealed to its members and persons represented by it not to work for Northern unless or until Northern assigned to employees who are members of, or represented by, respondent the work of moving vehicles to and from the point where such vehicles are taken over by, or released from, "the hook." Northern protested in vain and acquiesced under duress. The loading of vehicles thereafter under protest continued with respondent supplying gangs of 22 instead of 15 men as theretofore.

The net result of all this is that Northern is being squeezed between the competing demands of two unions, each of which claims the work, although neither has filed a charge or complaint against the other.

Under the facts and circumstances shown, there is reasonable cause to believe that the unfair labor practice with which respondent is charged has interrupted and tends to impede and disrupt the business of Northern. The belief that the unfair labor practice charged herein is affecting and will affect commerce within the meaning of the Act is reasonable.[7] The belief that respondent's conduct violates the charged section of the Act and that a Board complaint should issue thereon is also reasonable. Section 8(b)(4)(i)(ii), subparagraph (D), of the Act provides:

"8(b) It shall be an unfair labor practice for a labor organization or its agents—* * *

"(4)(i) to engage in, or induce or encourage any individual em-

---

red within this judicial district. The Court has jurisdiction in the instant matter. See Section 10(l) of the Act, infra.

6. And this despite the presence in Northern's contract with respondent (G–3) of the following provision:

"14. Minimum number of men in gang when discharging or loading general cargo to or from the pier shall be twenty-two (22) men, including drivers of mechanical equipment, not less than eight

(8) hold men discharging and eight (8) hold men loading."

7. N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Polish National Alliance, etc. v. N. L. R. B., 322 U.S. 643, 647, 64 S.Ct. 1196, 88 L.Ed. 1509; Santa Cruz Fruit Packing Co. v. N. L. R. B., 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954.

ployed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

\* \* \* \* \* \*

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work."

The facts summarized above plainly warrant the belief that respondent has engaged in, and has induced and encouraged individuals employed by Northern, and other persons engaged in commerce or in industries affecting commerce, to engage in, strikes or refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials, or commodities or to perform services, and have threatened, coerced and restrained Northern, and other persons engaged in commerce or in industries affecting commerce. The belief is also plainly warranted that respondent engaged in this conduct with an object of forcing or requiring Northern,

to assign the work of moving the aforesaid vehicles to and from the side of the ship as above set forth to employees who are members of, or represented by, respondent, rather than to employees who are members of Local 14, or who are not members of, or represented by, respondent.

■ Section 8(b) (4) (i) (ii) (D) prohibits all strike conduct, or inducement of such, whether primary or secondary, for the objective proscribed by the section. It is designed to protect commerce from disruption over jurisdictional claims of a labor organization to work which has already been assigned to members of another labor organization, or another trade, craft or class. The only exemption specified in the Act is when an employer is failing to adhere to a Board order or certification covering the work in dispute. Respondent has shown no such Board order or certification.

■ Respondent contends that it is entitled to the work demanded because of a contractual assignment. Whether or not this be so, it is an issue which must be resolved by the Board in the proceeding before it and not by this Court. See Douds v. International Longshoremen's Ass'n, 2 Cir., 242 F.2d 808, 810; Douds v. Milk Drivers & Dairy Employees, 2 Cir., 248 F.2d 534, 537–538; Vincent v. Chauffeurs, Teamsters & Helpers, D.C. W.D.N.Y., 186 F.Supp. 583, 41 LRRM 2403, 2404; Dooley v. Highway Truck Drivers & Helpers, etc., D.C., 182 F.Supp. 297.

On the record before us, reasonable cause plainly exists to believe that respondent has violated Section 8(b) (4) (i) (ii) (D) of the Act.[8]

8. Schauffler v. United Ass'n of Journeymen, 3 Cir., 218 F.2d 476; Douds v. International Longshoremen's Ass'n, 2 Cir., 242 F.2d 808; Douds v. Wood, Wire & Metal Lathers Ass'n, 3 Cir., 245 F.2d 223; Local 450, International Union of Operating Engineers v. Elliott, 5 Cir., 256 F.2d 630; Herzog v. Parsons, 86 U. S.App.D.C. 198, 181 F.2d 781; Juneau Spruce Corp., 82 N.L.R.B. 650, 660, 90 N.L.R.B. 1753, 1754, and see International Longshoremen's etc. Union v. Juneau Spruce Corp., 9 Cir., 189 F.2d 177, affirmed 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275; Denali-McCray Construction Co., 118 N.L.R.B. 109; Irwin-Lyons Lumber Co., 82 N.L.R.B. 916; Farnsworth & Chambers Co., 115 N.L.R.B. 617; Westinghouse Electric Co., 83 N.L. R.B. 477, 481; Stroh Brewery Co., 88 N.

Application for injunctive relief under Section 10(*l*) of the Act has frequently been made to this Court.[9] In brief, the Act empowers the Board, upon the filing of appropriate charges, to issue, hear and determine complaints that employers or labor organizations have engaged in unfair labor practices within the meaning of the Act. (Section 10(a), (b) and (c) of the Act). Congress was aware, however, that proceedings of this character—which ultimately are reviewable by the Court of Appeals (Section 10(e) and (f) of the Act)—are protracted and time consuming, and that certain unfair labor practices being committed by labor organizations gave, or tended to give, rise to such serious and unjustifiable interruptions to commerce that their continuance, pending disposition by the Board, would result in irreparable injury to the purposes of the Act.[10] Accordingly, in order to prevent a frustration of the statutory purpose, Congress provided in Section 10(*l*) of the Act,[11] in pertinent part, that—

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 8(b), or section 8(e), or section 8(b) (7), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States (including the District Court of the United States for the District of Columbia) within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: * * * Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: *Provided further,* That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members * * *. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 8(b) (4) (D)."

Section 10(*l*) of the Act embodies the determination of Congress that even the

L.R.B. 844, 849–850; New London Mills, 91 N.L.R.B. 1003, 1007–08; Direct Transit Lines, 92 N.L.R.B. 1715, 1722; LeBaron v. Los Angeles Building & Const. Trades Council, D.C.S.D.Cal., 84 F.Supp. 629, affirmed, 9 Cir., 185 F.2d 405; Brown v. Roofers & Waterproofers Union, Local No. 40, D.C.N.D.Cal., 86 F. Supp. 50; Anning-Johnson Co., 113 N. L.R.B. 1237, inforced N. L. R. B. v. Local Union No. 9, etc., 4 Cir., 255 F.2d 649.

9. See, e. g., Schauffler v. United Association, 3 Cir., 218 F.2d 476; Schauffler v. Local 1291, ILA, et al., D.C.E.Pa., 46 L.R.R.M. 2047.

10. See, e. g., S.Rep. No. 105, 80th Cong., 1st Sess., pp. 8, 27.

11. Employer unfair labor practices and other union unfair labor practices are enjoinable under Section 10(j) of the Act.

threatened disruption of commerce by acts and conduct proscribed by Section 8(b) (4) (i) (ii) (D) is unjustified and inimical to the national interest. In that section, therefore, Congress imposed a mandatory duty upon the Board's officer or regional attorney to whom the matter it referred to seek injunctive relief in the appropriate district court upon a reasonable belief that a violation has occurred and empowered the court petitioned to grant the injunctive relief deemed "just and proper." The legislative history of the Act shows that Congress intended such power to be exercised by the court in aid of the "prompt elimination of the obstructions to the free flow of commerce" which the relatively slow procedures before the Board had failed to achieve.[12]

██ Under such circumstances, the propriety of injunctive relief in Section 10(*l*) cases turns not upon traditional equity criteria applicable in suits between private parties, but upon the necessity of effectuating the statutory policy. Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 88 L.Ed. 754. It is well settled that where Congress sets the standards for the issuance of injunctions, those standards, and no others, need be satisfied to sustain the prayer for injunctive relief.[13]

██ Respondent's deliberate conduct, designed to defeat the objectives of the Act and to disrupt the operations of Northern and other persons, clearly is the kind of activity intended by Congress to be enjoined by the Court under the "just and proper" criteria established by the Act for the Court's exercise of its functions. Likewise, the scope of the relief sought herein falls well within those standards. The requested order is directed only against the labor organization charged with having committed the unfair labor practice, and against agents and persons acting in concert with it; it enjoins only the acts which respondent has been charged with committing in violation of Section 8(b) (4) (i) (ii) (D) of the Act, and similar acts in violation of that section. The relief sought, being limited to a prevention of the specific evil which Congress desired to eradicate, is clearly warranted by the Act.[14]

Actually the relief requested of the Court in this proceeding is commensurate with the danger found by Congress to exist in the continuance of the kind of conduct engaged in by respondent and is necessary to assure its discontinuance. Moreover, "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." Virginian Railway Co. v. System Federation, No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789. "For the standards of the public interest not the requirements of private

12. S.Rep. No. 105, 80th Cong., 1st Sess., pp. 8, 27.

13. See Brown, for and on Behalf of N. L. R. B. v. Pacific Telephone & Telegraph Co., 9 Cir., 218 F.2d 542, 544–545; Douds v. International Longshoremen's Ass'n, 2 Cir., 242 F.2d 808, 811; Madden v. International Organization of Masters, Mates & Pilots, 7 Cir., 259 F.2d 312, 313, certiorari denied 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229; Lenroot v. Interstate Bakeries Corp., 8 Cir., 146 F. 2d 325, 327; Douds v. Local 294, D.C. N.D.N.Y., 75 F.Supp. 414; Evans v. International Typographical Union, D.C.S. D.Ind., 76 F.Supp. 881; S. E. C. v. Torr, 2 Cir., 87 F.2d 446; American Fruit Growers v. United States, 9 Cir., 105 F. 2d 722; United States v. Adler's Creamery, 2 Cir., 110 F.2d 482.

14. *International Brotherhood of Electrical Workers v. N. L. R. B.*, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; Printing Specialties & Paper Converters Union v. LeBaron, 9 Cir., 171 F.2d 331; Douds v. Local 1250, Retail Wholesale Dept. Store Union, 2 Cir., 170 F.2d 700; Douds v. International Longshoremen's Ass'n, 2 Cir., 242 F.2d 808, 811; United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 170 F.2d 863; Shore, etc. v. Building & Construction Trades Council, 3 Cir., 173 F.2d 678, 8 A.L.R.2d 731; Los Angeles Building & Construction Trades Council v. LeBaron, 9 Cir., 185 F.2d 405, affirming, D.C.S.D.Cal., 84 F. Supp. 629.

litigation measure the propriety and need for injunctive relief in these cases." Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754; F. T. C. v. Rhodes Pharmacal Co., 7 Cir., 191 F. 2d 744, 747. Congress has found that the discontinuance of conduct like respondent's pending the disposition by the Board of the unfair labor practice charge is necessary "adequately to protect the public welfare which is inextricably involved in labor disputes." S.Rep. No. 105, 80th Cong., 1st Sess., p. 8. "When Congress itself has struck the balance, [between conflicting public interests] a court of equity is not justified in ignoring that pronouncement under the guise of exercising equitable discretion." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 609–610, 72 S.Ct. 863, 897, 96 L.Ed. 1153. "And the proper working of the scheme fashioned by Congress to determine industrial controversies fairly and peaceably demands that the courts quite as much as the administrative body act as Congress has required." N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 343, 60 S.Ct. 918, 931, 84 L.Ed. 1226.

What we have said here has been said so much better by District Judge Steel, of the District of Delaware, in Dooley v. Highway Truckdrivers, etc., 182 F.Supp. 297, 303 supra, decided on February 26, 1960, that we call special attention to that case. It involved somewhat similar facts.

There Local 107 of the Highway Truckdrivers threw picket lines around the Wilmington, Delaware, plant of Safeway Stores, Inc. The latter filed a charge with the Board under Section 10(k) of the Act and alleged that Local 107, in violation of Section 8(b) (4) (D) was engaging in a strike to compel Safeway to assign work to members of Local 107 rather than to the members of two other labor organizations. The charge was referred to Dooley, the Acting Regional Director of the Fourth Region of the Board. He filed a petition in the District Court of Delaware seeking an injunction on behalf of the Board under Section 10 (l) of the Act to enjoin Local 107 from engaging in alleged unfair labor practices in violation of the same asserted provisions of the Act alleged here, pending a final adjudication by the Board. Judge Steel granted the prayer of the petition and issued the injunction on a finding that, "It is just, proper and appropriate that, pending the final adjudication of the controversy by. the Board, Local 107, its officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or in participation with it or them be enjoined and restrained from the commission, continuation or repetition of the acts and conduct set forth * * *."

Respondent sets forth as a defense and also in its motion to dismiss that injunctive relief can be granted only if there is reasonable cause to believe that the Board will make an affirmative assignment of the work in dispute, citing the Third Circuit case of N. L. R. B. v. United Association etc. of Pipefitters, 242 F. 2d 722, in which Judge Hastie wrote the opinion for the Court. Our answer to this argument is that we are not here concerned, as was the Third Circuit, with enforcement of a Board order following completion of procedures under §§ 10(k), (b), and (c). Rather we are concerned with preliminary relief under § 10(l) as an' aid to effective Board action under § 10(k). It is not necessary for us, in the present posture of the case, to consider whether or not the Board will comply with the provisions of § 10 as interpreted by this Circuit. An injunction issued by this Court will expire upon the rendering of a determination by the Board under § 10(k). Enforcement of compliance by the respondent with the Board's determination will then be a matter for the Board under § 10(c) and for the Board and the Third Circuit under § 10(e).[15]

15. We note that neither the respondent nor the petitioner has cited any authority concerning the effect of N. L. R. B. v. United Ass'n of Journeymen, 3 Cir., 242 F.2d 722, on the present situation.

Respondent's counsel contends here, as did counsel for Local 107 in Dooley, that no jurisdictional dispute is involved because neither union (Local 14 or Local 1291) has filed a charge or complaint against the other under Section 8(b) (4) (D) of the Act. We know no better way of answering than in the words of Judge Steel in the Dooley case (182 F.Supp. at page 306):

"Finally, Local 107 urges that Sec. 8(b) (4) (D) was directed against jurisdictional disputes and that no jurisdictional dispute is here involved because no disagreement exists between the unions. The only controversy, it is said, is between Local 107 and Safeway, and relates to the right of Safeway to discharge its employees who are members of Local 107, to unilaterally terminate the collective bargaining relationship between Safeway and Local 107, *and to change its work methods.* It *is unnecessary to decide with finality just what a jurisdictional dispute is,* or to determine with finality whether Sec. 8(b) (4) (D) was intended to reach disputes in addition to those which are jurisdictional, however the latter may be defined. The responsibility of the Court in this proceeding is to decide only whether petitioner had reasonable cause to believe that Sec. 8(b) (4) (D) was being violated." (Emphasis supplied.)

In conclusion, it is our opinion that petitioner has made out a case that there is reasonable cause to believe that respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(b) (4) (i) (ii), subparagraph (D) of said Act, affecting commerce within the meaning of Sections 2(6) and (7) of said Act, and that such acts and conduct will likely be repeated or continued unless enjoined.

For the reasons given, respondent's motion to dismiss will be and hereby is denied, and an order will be entered granting a temporary injunction, as prayed for by petitioner.