**HERZOG et al. v. PARSONS.**

No. 10396.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 12, 1949.

Decided Feb. 20, 1950.

782

Mr. Henry Mayer, of the Bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, with whom Messrs. Ellis W. Manning and Leonard E. Ackermann, Washington, D. C., were on the brief, for appellee.

Before CLARK, PRETTYMAN and BAZELON, Circuit judges.

CLARK, Circuit Judge.

The principal problem presented by this appeal involves a construction of the language of section 10(k) of the Labor Management Relations Act, 1947 [1] (hereinafter referred to as the "Act"). This section provides: "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 8(b), the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

The question is whether or not the mandate of this section permits the National Labor Relations Board [2] (hereinafter referred to as the "Board") to make preliminary investigations after the filing of the charges but prior to the hearing to determine whether or not the facts disclose such a *prima facie* case as to warrant further proceedings.

The Board has appealed from an order of the United States District Court for the District of Columbia holding in effect that the mandate of 10(k) comes into operation as soon as a charge alleging an unfair labor practice within the meaning of 8(b) (4) (D)[3] is filed with the Board.

Mr. A. Norman Somers, Assistant General Counsel, National Labor Relations Board, Washington, D. C., for appellants.

1. 61 Stat. 136, 29 U.S.C.A. § 141 et seq.
2. The Board is created by section 3(a) of the Act; 61 Stat. 139, 29 U.S.C.A. § 153 (a).

3. Section 8(b) (4) (D) provides: "It shall be an unfair labor practice for a labor organization or its agents * * * to engage in, or to induce or encourage

Before, however, we can reach a discussion of this problem we must first consider two other contentions made by appellant. The Board urges (1) that the court below lacked jurisdiction over the subject matter, and (2) that the complaint fails to state a cause of action. The first contention is based on an assumption that the Board's interpretation of 10(k) is correct. Although, as will be subsequently pointed out, we do agree with that construction, nevertheless, where the jurisdiction of a Federal District Court to act on the premises depends on the interpretation of a statute alleged by one of the parties to preclude that court's taking jurisdiction, there is always the authority in the first instance to construe the statute in order to find an answer to the jurisdictional question thus posed.[4]

Despite appellant's claim that its interpretation of 10(k) is not necessary to sustain the second contention that the complaint fails to state a cause of action, an examination of the underlying reasons assigned draws us to the conclusion that here also the basis for the argument lies in our acceptance of that construction. Hence, for the reason already stated, we cannot as yet say that the complaint fails to state a cause of action.

We are thus brought to the pivotal question on this appeal. Does the mandatory language of section 10(k) compel the Board to hear the dispute on the filing of a charge of an unfair labor practice within the meaning of 8(b) (4) (D), or may the Board, after the charge has been filed, conduct a preliminary investigation to see whether the facts warrant further proceedings?

Neither the appellant nor the appellee deny that the words "empowered and directed" act as a mandate to the Board to hear and determine disputes out of which 8(b) (4) (D) violations have arisen. Appellee, however, urges upon us that the introductory words of paragraph (k) of section 10 mark off the time at which the statutory command goes into effect; and thus "whenever it is charged" that an unfair labor practice within the meaning of section 8(b) (4) (D) has been committed, the Board must without further ado proceed to hear and determine the dispute. Appellee claims that this construction gives effect to the clear and unambiguous language of the section and to the purpose and structure of the statute and the physical and logical relationship between its several parts. In support of this argument appellee points to the obvious differences in language between 10(b)[5] and 10(k), and concludes that, since the Board has been instructed to proceed in one manner when issuing complaints under 10(b) and in another manner when an 8(b) (4) (D) charge is involved, 10(k) proceedings were intended to be distinct and separate from the rest of section 10. After pointing out that 10(b) applies generally to all unfair labor practice charges while 10(k) applies specifically and solely to an 8(b) (4) (D) charge; that 10(b) uses permissive language while 10(k)

the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: * * * forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *."

4. Chicot County Drainage District v. Baxter State Bank, 1940, 308 U.S. 371, 376, 60 S.Ct. 317, 319, 84 L.Ed. 329, 333; Dollar v. Land, 1946, 81 U.S.App.D.C. 28, 32, 154 F.2d 307, 310; Seaboard & Western Airlines, Inc., v. C. A. B., consolidated with Seaboard & Western Airlines, Inc., v. C. A. B., American Overseas Airlines, Inc., Intervenor, Pan American Airlines, Inc., Intervenor, —— App.D.C. ——, 181 F.2d 515.

5. Section 10(b) empowers the Board to issue complaints on the filing of charges. The power to make preliminary investigations under this section is acknowledged by appellee.

uses mandatory language; that 10(b) confers power upon the Board or any agent or agency designated by it while 10(k) empowers and directs the Board alone with no provision for delegation; and that 10(b) contemplates the issuance of a complaint while 10(k) directs a hearing and determination, he argues that it must be concluded from these differences that had Congress intended that the Board be permitted to investigate the 8(b) (4) (D) charge in the same manner as it investigates the other charges filed under 10(b), it would have granted that power in the same words as those used in 10(b).

In the first place we have a great deal more difficulty in finding the language of 10(k) as clear and unambiguous as does the appellee. On the contrary an examination of the language of that section discloses stronger support for the Board's view than it does for the one urged upon us by appellee. The Board is empowered and directed to do two things: to hear and to determine. But there is only one thing which the Board may hear and determine and that is a dispute out of which an unfair labor practice within the meaning of 8(b) (4) (D) has arisen. Not all disputes give rise to 8(b) (4) (D) violations despite a charge so averring. And yet the Board may not hear and determine a dispute under 10(k) unless an 8(b) (4) (D) violation has resulted. The existence of an unfair labor practice within the meaning of 8(b) (4) (D) is a *sine qua non* to the Board's power to hear and determine such a dispute. A mere charge of an 8(b) (4) (D) violation does not, *ipso facto,* operate to give verity to the existence of such an unfair labor practice. Thus before the Board may proceed to a hearing it must determine whether in fact the dispute does give rise to the 8(b) (4) (D) violation, and, in order to make this determination, it must conduct a preliminary investigation. This is the only rational construction that can be made of the language of 10(k) itself. If we reached the conclusion contended for by the ap-

pellee, we would in effect be rewriting that section to read "the Board is empowered and directed to hear and determine the dispute out of which such *charge* shall have arisen." Had the section been worded this way then the existence of an 8(b) (4) (D) violation would be immaterial as long as it had been alleged in the charge.

By adopting this method of proceeding under 10(k), the Board is not, as appellee claims, attempting to carry over into that section the same discretionary power it exercises under 10(b). The power to make investigations exists independently within that section. It is derived, with equal dignity to that in 10(b), from the same broad general grant of investigatory power set out in section 3(d) which provides that the General Counsel of the Board "shall have final authority, on behalf of the Board, in respect of the investigation of charges and the issuance of complaints under section 10 * * *." This power to investigate is granted in respect of all charges under section 10. It is not in any way limited to charges under 10(b). A clear indication that this was Congress' intent is demonstrated by the language in 10(l)[6] which specifically discusses investigation in the following language: " * * * the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred." Had Congress not felt that the power to investigate was necessarily inferred throughout the whole of section 10, and had they intended that the power be especially granted under paragraph (l), it is our opinion that the foregoing language would not have been used. The very use of the word "the" presupposes the existence of the power to investigate. The word "a" would have been more appropriate had it been intended to grant a power which did not exist. The sentence is placed in the paragraph solely for the purpose of explaining a procedure for preliminary screening which deviates from

6. Section 10(l) applies in cases of charges alleging unfair labor practices within the meaning of 8(b) (4) (A), (B), or (C) and commands the investigating officer, on behalf of the Board, to petition the district court for a temporary restraining order where investigation reveals probable cause.

the normal method of investigating under the other subsections of section 10.

In referring to appellee's argument that his construction of the statute gives effect to its purpose and structure and the physical and logical relationship between its several parts [7] we need say little more than that appellee's attempt to draw such conclusions from a comparison of the language of 10(b) and 10(k) results in little more than an exercise in dialectics which begs the question before us. We do not argue with appellee that the provisions of 10(k) apply specifically and solely to 8(b) (4) (D) charges or that the language of 10(k) is mandatory while 10(b) is permissive, but we cannot agree that these differences are reliable sign posts to show that Congress intended that the Board was not to make preliminary investigations on the filing of 8(b) (4) (D) charges. Nor does the fact that 10(k) empowers and directs the Board alone to hear and determine these disputes, while 10(b) permits the powers granted thereunder to be delegated, aid the appellee's contention. The question before us is not whether the Board may or may not hear and determine the dispute, but whether it may or may not first conduct a preliminary investigation prior to having a hearing. Likewise, we cannot agree that 10(k) does not contemplate the issuance of a complaint under 10(b). Supposing that the parties should fail to comply with the Board's determination of the underlying dispute, there can be no doubt that the 8(b) (4) (D) charge will always be subject to further proceedings under 10(b). Such a charge therefore does involve the issuance of a complaint, and for that reason alone its provisions should dovetail with 10(b), and the preliminary screening procedure of 10(b) must be equally applicable to 8(b) (4) (D) charges.

Although appellee contends that his construction of 10(k) gives effect to its

purpose, it is significant to note that nowhere in his brief does he say what that purpose is. The aim of 10(k) can best be described by alluding to the language of the Senate Report of the Committee on Labor and Public Welfare [8] on the Senate version of the present Act. This report in referring to additional procedures for certain unfair labor practices, especially jurisdictional disputes and secondary boycott, says:

"Time is usually of the essence in these matters * * *. [P. 8.]

"* * * [I]t has sometimes been possible for persons violating the act to accomplish their unlawful objective before being placed under any legal restraint and thereby make it impossible or not feasible to restore or preserve the status quo pending litigation. [P. 27.]

"In subsections (j) and (l) to section 10 the Board is given additional authority to seek injunctive relief. By section 10(j), the Board is authorized, after it has issued a complaint alleging the commission of unfair labor practices by either an employer or a labor organization or its agent, to petition the appropriate district court for temporary relief or restraining order. Thus the Board need not wait, if the circumstances call for such relief, until it has held a hearing, issued its order, and petitioned for enforcement of its order. [P. 27.]

"Section 10(l) makes it mandatory upon the Board to petition for injunctive relief in the case of strikes or boycotts that are alleged to constitute unfair labor practices within the meaning of paragraphs (A), (B), and (C) of section 8(b) (4). Moreover, cases of this type are to be given priority, and when the Board agent charged with the investigation has reasonable cause to believe that the charge is true and that a complaint should be issued, he is required to petition the district court for

7. Words, sections, and paragraphs of a statute must be interpreted with reference to the surrounding words, sections, and paragraphs. Thus when there is doubt as to the meaning of a given part of a statute, the construction thereof should be made in light of the context of the whole. See Panama Refining Co.,

et al. v. Ryan, et al., 1935, 293 U.S. 388, 416, 55 S.Ct. 241, 246, 79 L.Ed. 446, 457, et seq., which applies this formula in construing section 9(c) of the National Industrial Recovery Act.

8. Sen. Rep. No. 105, 80th Cong., 1st Sess. (1947).

appropriate injunctive relief pending final adjudication by the Board. In the case of strikes and boycotts involving jurisdictional disputes, the same procedure may be used if appropriate; injunctive relief in such cases is made discretionary because it is anticipated that the separate machinery provided in section 10(k) for settling such disputes will generally suffice. [P. 27.]

"Jurisdictional disputes that constitute unfair labor practices within the meaning of section 8(b) (4) (D) may be heard by the Board or an arbitrator unless within 10 days the parties satisfy the Board that they have adjusted the dispute or agreed to methods for adjusting it. If the parties comply with the determination of the Board or the arbitrator appointed by it, or voluntarily adjust the dispute, the Board shall dismiss the charge. Finally, the award of the arbitrator is given the same status and force as a final order of the Board, a provision which will avoid the necessity of the Board hearing the dispute if it has designated an arbitrator for that purpose and also will permit the Board to seek enforcement of the award without further proceedings." [P. 27.]

It is apparent, therefore, that the purpose of the new remedies made available to the Board by the addition of subsections (j), (k), and (l) was to afford interim relief in certain cases and under certain circumstances where the Board desires to preserve the *status quo* pending the final outcome of the litigation. 10(k) is an integral part of the machinery thus provided, and it must be considered in relation to paragraphs 10(j) and 10(l) inasmuch as their provisions also apply to 8(b) (4) (D) violations. When, therefore, a 10(k) proceeding terminates in the issuance of a complaint, as it well may, the provisions of 10(j) will operate to permit the Board to petition the district court for appropriate temporary relief. If, on the other hand,

during the pendency of a 10(k) proceeding, more immediate relief should be deemed appropriate the Board may proceed under 10(l). In such cases, after preliminary investigation has established reasonable cause to believe that the charge is true and that a complaint should issue, the officer to whom the matter was referred may petition the District Court for a temporary restraining order. Under these circumstances it would be ridiculous to suppose that Congress intended on the one hand that the Board or its agents make a preliminary investigation under 10(l), while on the other hand command the Board to hear and determine the case even though the preliminary investigation revealed insufficient probable cause. We cannot subscribe to a construction of the statute which would lead to such irrational results.[9]

The legislative history of the Act is of little help in answering the precise problem before us. Section 10(k) originated in the Senate amendment and had no counterpart in the House bill.[10] As it was proposed, either the Board or an arbitrator was to hear disputes out of which 8(b) (4) (D) violations arose.[11] In its final form the provisions for an arbitrator were removed.[12] No reason was given for this deletion. It is reasonable to suppose, however, that this was done to avoid a splitting of jurisdiction which might result in possible delay. Since the Board was better equipped to handle the problem, having been vested with the necessary procedure and power to make final settlements in all disputes, it was more expedient to give it the sole authority to arbitrate cases involving 8(b) (4) (D) violations. But we cannot conclude, as does appellee, that Congress, by purposefully placing this burden on the Board, intended that 10(k) proceedings must be handled by the Board alone as isolated and distinct from the rest of section 10 regardless of the difficulties

9. Ozawa v. U. S., 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed 199, 207; U. S. v. American Trucking Ass'n., 1940, 310 U.S. 534, 542–544, 60 S.Ct. 1059, 1063–1064, 84 L.Ed. 1345, 1350–1351.

10. H. R. Act 3020, 80th Cong., 1st Sess. (1947).

11. S. Bill 1126, 80th Cong. 1st Sess. (1947).

12. Senate-House Conference Committee Rep. on Labor-Management Relations Act of 1947, Statement of the Managers on the Part of the House.

thereby created. We think Congress intended to have 10(k) proceedings dovetail with the rest of section 10 in order that the applicable machinery of the other subsections might be more easily implemented if and when necessary. Thus, though the Board may on the one hand be attempting to arbitrate a dispute under 10(k), it was contemplated on the other hand that other proceedings under section 10 might also be instituted either before, during, or after the hearing and determination. A preliminary investigation is always permitted in these other proceedings where an 8(b) (4) (D) violation is concerned, and we must conclude, in light of reason and of the fact that nowhere in the Act is that right expressly excluded in a 10(k) action, that it was intended that such investigations be permitted.

Not only is the right to conduct investigations in 10(k) proceedings not expressly excluded by the Act, but it is our opinion that the power to make them is spelled out in other sections. As we have already pointed out, section 3(d), in creating a General Counsel of the Board, gives him "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10 * * *." It is not unreasonable to suppose that if Congress had intended that no preliminary investigation be made in 10(k) proceedings, it would have carved from this general grant of power the right to investigate under that section. Since it did not do so, it is not illogical for us to presume that such investigations were to be made. Section 11 also refers directly to this investigatory power. It authorizes the Board to use subpœnas to compel the production of documents and the presence of witnesses and makes other provisions for the enforcement of process, "For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by section 9 and section 10." Obviously, in the opinion of the Board, an investigation of an 8(b) (4) (D) charge prior to a hearing is necessary and proper for the exercise of the powers vested in it by section 10. Equally obviously, had the legislature intended that such investigations would be improper and unnecessary under 10(k), it would have carved out of the above quoted language of section 11 the power to make them. Since this was not done, we cannot help but conclude that the power was intended to be implied.

■ This construction does not, as appellee argues, result in an effective emasculation of the Congressional mandate to the Board to hear and determine these disputes. On the contrary the mandate is obeyed when a *prima facie* case is established though not until then. Congress could not have intended otherwise. To agree with the appellee would, we think, remove the provisions of 10(k) from the rational scheme of the whole. The administrative proceedings of the Board would be hampered by the necessity of proceeding to a hearing on even the most frivolous of charges alleging an 8(b) (4) (D) violation. It would be compelled to hear disputes even though the primary jurisdictional requirement that they be such as to hamper commerce be lacking.[13] Likewise, even though strikes within the meaning of 8(b) (4) (D) are permitted in cases where the employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work,[14] the Board would be unable to investigate to determine whether the conduct complained of was permissible. Nor could the Board investigate to see whether a complaining labor organization had filed the necessary financial reports[15] and non-Communist affidavit.[16] Results so absurd and incongruous as these could not have been intended by the legislature.[17]

13. Section 10(a) provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce."

14. Footnote 3, supra.

15. Section 9(f) and section 9(g).

16. Section 9(h).

17. Footnote 9, supra.

■ Appellee's argument that the Board itself has in its own decisions met this question and reached a determination consonant with appellee's position and contrary to the one which it now urges is based on an erroneous interpretation of the two cases he cites in support thereof. In both Matter of Moore Drydock Co., 81 NRLB No. 169, and Matter of Juneau Spruce Co., 82 NLRB No. 71, there is broad language which when taken and considered out of context would seem to lend some support to appellee's position, but a careful analysis of these two cases reveals that in both the issue before the Board did not and could not have involved the question now at hand. In both cases there is an unchallenged recital to the effect that after the filing of the 8(b) (4) (D) charge, an investigation pursuant to the Board's Rules and Regulations [18] was made. Admittedly in both these cases a problem involving the mandatory language of 10(k) was before the Board, but in neither case was that issue whether or not the Board could make a preliminary investigation after the filing of the charge but prior to hearing. In the Juneau Spruce case the question was whether the Board had the power, when an 8(b) (4) (D) charge was filed, to issue a complaint under 10(b) instead of first hearing and determining the dispute under 10 (k). In the Moore Drydock case the problem was whether in a 10(k) proceeding the Board had the power to certify one of the two unions to the dispute pursuant to the provisions of section 9.

This practice of the Board to make preliminary investigations in 10(k) proceedings was more recently stated in the case of Ship Scaling Contractors Association, 87 NRLB No. 14. These investigations have been habitually made in such cases since the promulgation of the Rules and Regulations of the Board in 1947 [19] after the passage of the present Act, and this interpretation appears to have received Congressional approval. As stated by appellant in its brief and not denied by appellee, "On December 31, 1948, the Joint Committee on Labor-Management Relations (created by Sec. 401 of the Labor Managment Relations Act, 29 U.S.C.A. § 191) filed a report which states (Report No. 986, Part 3, 80th Congress, 2d Sess., p. 57):

" 'The Committee is *happy to report* that the history of [Section 8(b) (4) (D) ] during its 17 months' existence *has not been one of Board hearings and orders*. The Board has yet to decide a jurisdictional dispute. Formal action has been initiated in three cases.' [Emphasis added.]

"When this report was issued, 99 charges involving 8(b) (4) (D) had been filed, all of these had been preliminary [sic] screened, and of the 89 cases in which investigation had been completed, 86 (including the two charges involved in this case) had been closed without 10(k) hearing. *Source:* N. L. R. B. Administrative Statistics Branch. Moreover, long before issuance of the report, appellee had specifically complained to the Committee about the Board's practice of investigating 8(b) (4) (D) charges and of allowing only those with *prima facie* merit to proceed to the 10(k) stage. Hearings before the Joint Committee on Labor-Management Relations, 80th Cong., 2d Sess., Part 2, pp. 781–782."

■ Returning now to the first two contentions of the Board discussed in the initial phases of this opinion, we must conclude from our analysis and construction of section 10(k) that the lower court did lack jurisdiction over the subject matter and that the complaint under the circumstances did fail to state a cause of action. It is not necessary for us to decide at this time to what extent this decision precludes judicial review of these administrative determinations by the General Counsel of the Board,[20] though we do agree with the action of the Board in the instant case in refusing to review the determination of that officer because by virtue of the provisions of the Act final authority, at least as far

---

18. 29 C. F. R. 203.74, 203.75 (Supp.1947).

19. 29 C. F. R. 203.1–203.97 (Supp.1947) inclusive, issued under Sec. 6, 49 Stat.

452, 29 U.S.C. 156, effective August 22, 1947, 12 F.R. 5657.

20. See Lincourt v. N. L. R. B., 1 Cir., 1948, 170 F.2d 306.

as the Board is concerned, is vested in him.[21]

The case is accordingly reversed and remanded with instructions to the lower court to dismiss the cause for lack of jurisdiction over the subject matter and for failure of the complaint to state a cause of action.

Reversed and remanded.