**LOCAL 450, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Appellant,**

v.

**Edwin A. ELLIOTT, Regional Director of the Sixteenth Region of the National Labor Relations Board, for and on Behalf of The National Labor Relations Board, Appellee.**

No. 16918.

United States Court of Appeals
Fifth Circuit.

June 24, 1958.

Warner F. Brock, Houston, Tex., Combs, Brock & Mitchell, Houston, Tex., for appellant.

Winthrop A. Johns, Asst. Gen. Counsel, N. L. R. B., Thomas McDermott, Associate Gen. Counsel, Washington D. C., Jerome D. Fenton, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Joseph I. Nachman, Attorney, National Labor Relations Board, Washington, D. C., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment granting a temporary injunction under Section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160 (*l*), on a petition filed by the Sixteenth Regional Director of the National Labor Relations Board (Board) against Local 450, International Union of Operating Engineers AFL-CIO (appellant). The petition alleged that the appellant was engaging in unfair labor practice under Section 8(b) (4) (A) and (D) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(b) (4) (A) and (D).

The petition was the result of findings made by the Director in a preliminary investigation into charges made against the appellant by three employers, The Austin Company, the Monsanto Chemical Company, and Tampco Piping, Inc. After extensive testimony in the district court, an order issued granting a temporary injunction, from which this appeal is prosecuted.

It appears that, pending this appeal, the Board has finally determined the Austin Company matter and that thereby the temporary injunction as to the Austin Company in connnection with a construction job for Dow Chemical Company has expired and become ineffective by its terms, and that the portion of the appeal having reference to those two companies in that connection is now moot. We shall, of course, refrain from any discussion of that part of the appeal.

The facts alleged in the petition as substantiated by the district court's findings of fact are briefly summarized as follows. Monsanto Chemical Company, operating a plant at Texas City, Texas, awarded contracts to Tampco Piping, Inc., A. A. Pruit Company, P. A. Newman & Sons, The Armstrong Cork Company, and the Prichard Company to perform certain construction and maintenance work on the Texas City Plant. The Prichard Company subcontracted some of its work to Sline Industrial Painters. (The above named companies will hereinafter be referred to as Monsanto, Tampco, Pruit, Newman, Armstrong, Prichard, and Sline.) In performing the subcontract for painting, an air compressor was needed and Sline assigned the work of operating this air compressor to employees who were not members of appellant. For a number of years, the appellant has maintained that the operation of air compressors is within the exclusive jurisdiction of appellant and has demanded that employers, including Sline, assign such work to employees who are members of appellant rather than of another union. Sline has refused this demand. On April 3, 1957, appellant ordered or instructed its members, employed by Tampco, Pruit, and Newman, working at the Monsanto job to cease working. These directives were followed. The objects of appellant's acts, stated above, were: (1) to force or require Sline to assign the work of operating air compressors to employees who are members of appellant, and (2) to force or require Monsanto and other employers to cease doing business with Tampco, Pruit, Newman, and Prichard and to force Prichard and other employers to cease doing business with Sline, unless Sline assigns the work of operating air compressors to employees who are members of or represented by appellant.

The district court further found that at no time has the appellant been certified by the Board as the collective bargaining representative of the employees of Sline; that the appellant has refused orders of its International Union instructing appellant's members employed on the Monsanto job to return to work; that the appellant has engaged in other strikes in the area to enforce similar jurisdictional demands; and that such acts and conduct of the appellant have led to labor disputes burdening and obstructing commerce among the several States.

Section 8 of the Act deals with unfair labor practice, and subsection (b) (4) (A) defines the "secondary boycott," while subsection (b) (4) (D) defines "jurisdictional disputes." These subsections are as follows·

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; * * * (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *." Title 29, U.S.C.A. § 158(b) (4) (A) and (D).

Section 10(*l*) of the Act gives a remedy of injunction, when Sections 8(b) (4) (A), (B) or (C) are violated. Section 10(*l*) states that, after a charge of unfair labor practice under the named sections has been made, the Regional Director shall investigate the charge, and if he has "reasonable cause to believe such charge is true and that a complaint should issue," he shall petition a United States district court "for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems

just and proper, notwithstanding any other provision of law: * * *." The last sentence of Section 10(*l*) states that "In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 8(b) (4) (D)."

In reiteration, it is seen that the objectives of appellant's action are substantially: (1) to force Sline to assign the work of operating the air compressor to appellant's members; and (2) to force Monsanto and other employers to cease doing business with their various contractors (as Tampco) and to force Prichard to cease doing business with Sline, unless Sline assigns the air compressor operation to appellant's members. Thus, objective (1) relates to a "jurisdictional demand" and objective (2) to a "secondary boycott or strike." For the purposes of clarity and simplicity, we will refer to objective (1) as Sline Section 8(b) (4) (D) and objective (2) as Tampco Section 8(b) (4) (A).

Appellant contests the granting of the temporary injunction on several grounds, to be dealt with separately.

First, appellant says that a temporary injunction cannot issue relating to the Sline Section 8(b) (4) (D) jurisdictional dispute at Monsanto, because a hearing by the Board was not had pursuant to Section 10(k), 29 U.S.C.A. § 160(k), contending that a hearing by the Board under Section 10(k) is a procedural condition precedent to any injunctive action under Section 10(*l*) based on a Section 8(b) (4) (D) violation. To support this contention, appellant says that the last sentence of Section 10(*l*), stating that "In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 8(b) (4) (D)," shows that Congress did not authorize a 10(*l*) petition for injunctive relief in all Section 8(b) (4) (D) cases but only where such injunctive relief is appropriate, thereby showing an intent to treat Section 8(b) (4) (D) cases differently from Section 8(b) (4) (A), (B) and (C) cases. Appellant insists that injunctions may be issued in an

8(b) (4) (D) case only after the Board has issued a 10(k) determination and the respondent union has refused to comply with it, that not until after such a determination does there arise a "situation where such relief is appropriate."

 We do not agree with this contention. Section 10(k) empowers the Board to hear and determine a dispute growing out of a charge of a Section 8(b) (4) (D) violation and provides that the charge will be dismissed if, within ten days notice after the filing of the charge, the parties submit satisfactory evidence that they have either adjusted or agreed upon a method of adjustment of the dispute. A Section 10(k) determination is a prerequisite to the Board issuing a cease and desist order under Section 10(c),[1] but a Section 10(k) determination is not a condition to a filing of an application for injunction or the issuance of one under Section 10(l).[2] If a Section 10(k) determination were a prerequisite to a Section 10(l) injunction, the speedy remedy provided by Section 10(l) to preserve the status quo would be rendered useless as to jurisdictional disputes.[3] The Court of Appeals for the District of Columbia Circuit in Herzog v. Parsons, supra [86 U.S.App.D.C. 198, 181 F.2d 786], in holding that a preliminary investigation by the Board prior to a 10(k) hearing is not violative of the Act, stated:

"But we cannot conclude, as does appellee, that Congress, by purposefully placing this burden on the Board, intended that 10(k) proceedings must be handled by the Board alone as isolated and distinct from the rest of section 10 regardless of the difficulties thereby created. We think Congress intended to have 10(k) proceedings dovetail with the rest of section 10 in order that the applicable machinery of the other subsections might be more easily implemented if and when necessary. *Thus, though the Board may on the one hand be attempting to arbitrate a dispute under 10(k), it was contemplated on the other hand that other proceedings under section 10 might also be instituted either before, during, or after the hearing and determination.*" (Italics supplied.)

We hold that all that is necessary to determine the "situation where such relief is appropriate" is a finding to this effect by the Board in its preliminary investigation. To hold otherwise would contravene the obvious intent of Congress in providing a speedy remedy by temporary injunction for a jurisdictional strike.[4]

 Second, appellant insists that the district court erred in granting the temporary injunction based on the Sline Section 8(b) (4) (D) jurisdictional dispute since there was no "reasonable cause" to believe that appellant had engaged in unfair labor practices under this section of the Act. Appellant says that the Board failed to show that: (a) appellant was responsible for the work stoppage, (b) that employees of Sline were induced or encouraged, and (c) that Sline assigned the operation of its air compressor to its own employees. (a) After an examination of the evidence, we must hold that the trial court had "reasonable cause" to believe that appellant was responsible for the work stoppage. (b) It is true that appellant did not induce the *employees of Sline* to strike, but instead induced the employees of Tampco, Pruit, and Newman to cease

---

1. International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 1951, 342 U.S. 237, 244, 72 S.Ct. 235, 96 L.Ed. 275.

2. See Herzog v. Parsons, 1950, 86 U.S. App.D.C. 198, 181 F.2d 781.

3. Douds v. Wood, Wire and Metal Lathers Intern. Ass'n, 3 Cir., 1957, 245 F.2d 223.

4. See, Douds v. Wood, Wire and Metal Lathers Intern. Ass'n, supra; Douds v. International Longshoremen's Ass'n, 2 Cir., 1957, 242 F.2d 808; Schauffer v. United Ass'n of Journeymen, Inc., 3 Cir., 1955, 218 F.2d 476.

working on the Monsanto job until Sline assigned the operation of the air compressor to Sline's employees who were members of appellant. Therefore, the question presented is, must the inducement to strike be directed to the employees of *the* employer with whom the dispute exists before there can be a Section 8(b) (4) (D) violation? We must answer this question in the negative. This section in plain language states:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(4) to engage in, or to induce or encourage *the employees of any employer* to * * * strike * * *, where an object thereof is: * * * (D) forcing or requiring *any employer* to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization * * *."

This section plainly provides for the inducement of employees of both primary and secondary employers.[5] (c) Appellant states that the evidence shows that the work of running the air compressor was assigned to Sline's paint foreman, who is not an "employee" but a "supervisor" within the meaning of the Act, and that such prevents a Section 8(b) (4) (D) violation. However, as the appellee points out, there was no showing that this paint foreman was a supervisor within Section 2(11) of the Act, 29 U.S.C.A. § 152(11), and all foremen are not supervisors within the meaning of the Act.[6]

Third, appellant contends that the trial court had no authority to grant the injunction as to the Sline Section 8(b) (4) (D) jurisdictional dispute because the parties "have agreed upon methods for the voluntary adjustment of the dispute," which would require the Board to dismiss the charge under Section 10(k) of the Act; and, since the Board would have no authority to proceed under Section 10(k), it had no authority to petition for an injunction under Section 10(*l*). Generally, the facts giving rise to this contention are that Sline is bound by contract to submit jurisdictional disputes with certain unions, not including appellant, to arbitration by the National Joint Board for the Settlement of Jurisdictional Disputes.[7] The appellant likewise is bound by contract to submit jurisdictional disputes with certain employers, not including Sline, to the National Joint Board. The National Joint Board received notice of the disputes involved here and its chairman directed the general president of appellant to direct the local union to return to work. The Sline dispute was on the agenda of the National Joint Board for action at the time the injunction was given.

Mr. Fox, the vice president of Sline, appeared at the office of the N.L.R.B. on April 4, 1957 and stated to an agent of the N.L.R.B. at the time the charges were filed that he was anxious for the dispute to be resolved. This is noted in the following stipulation between the parties:

"The Court: It is stipulated and agreed by and between the parties hereto that on the occasion when Charles Fox, duly authorized agent and representative of Sline Indus-

---

5. See Bay Counties District Council of Carpenters & Joiners of America, 115 N.L.R.B. 1757; United Association of Journeymen, 112 N.L.R.B. 608; International Longshoremen's Association, Local 1294, 108 N.L.R.B. 313; United Association of Journeymen and Apprentices, 108 N.L.R.B. 186; District Council of the United Brotherhood, etc., 110 N.L.R.B. 2162.

6. See Cinch Manufacturing Corporation, 98 N.L.R.B. 781, 783; Memphis Cotton Oil Mill, 115 N.L.R.B. 515, 517, n. 2.

7. This National Joint Board was created by an agreement between the Building Trades Department (the Building Trades Unions of the old A.F. of L.) and various contractors, whereby labor and management would submit jurisdictional disputes for arbitration and settle disputes among themselves. The Joint Board is in no way connected with the National Labor Relations Board nor is it an agency of the United States.

trial Painting Contractors, appeared at the office of the National Labor Relations Board on which occasion the charges were filed against the defendant herein by Painting & Decorating Contractors of America, Houston Chapter, a conversation was had between Mr. Fox, Mr. Jerry McAfee and a Mr. Clifford W. Potter of the Houston office of the National Labor Relations Board. During the course of such conversation, Mr. Fox expressed a desire on behalf of his company to effect a settlement, an adjustment of the dispute with the defendant union; and stated that his company would agree to a determination of the matter by the National Joint Board for the Settlement of Jurisdictional Disputes in the building and construction industry, if such submission to such Board could be effective to settle the dispute, and Mr. Potter advised the Washington office of the N.L.R.B. of the filing of the charge, the contents thereof, and of Mr. Fox's statement."

With the background of the above facts, appellant states that, since Sline is bound by the National Joint Board's decisions of disputes with other unions and since appellant is bound by the National Joint Board's decisions with certain employers, the action of Sline's agent, Fox, in stating to the agent of the N.L.R.B. that Sline would "agree to a determination" by the National Joint Board, "if such submission to such Board could be effective to settle the dispute," was "satisfactory evidence" that both parties "agreed upon methods for the voluntary adjustment of the dispute" and, hence, the Board should have dismissed the charges under Section 10(k).

We cannot agree. It seems to us that Mr. Fox was merely *manifesting a desire* to settle the dispute and that his company would agree to a determination by the National Joint Board *if* such submission to the National Joint Board could effectively settle the dispute. The decision is for the Board in a 10(k) hearing as to whether or not these facts are satisfactory evidence that the parties have agreed upon a method for the voluntary adjustment of the dispute—that is, whether Sline has agreed to submit to a National Joint Board settlement.

Fourth, appellant contends that the Tampco 8(b) (4) (A) secondary boycott charge could not support injunctive relief because: (a) the facts do not constitute a "secondary boycott" within the meaning of Section 8(b) (4) (A); (b) the strike was not for the purpose of requiring Monsanto to cease doing business with Sline since Monsanto is not doing business with Sline; and (c) the appellant is not shown to have "induced or encouraged" employees at Texas City, therefore, there is no reasonable cause to believe that this charge is true.

(a) To support its contention that the facts do not support a "secondary boycott" within the prohibition of Section 8(b) (4) (A), appellant cites the Senate Report, SR 105, 89th Congress, page 22, stating:

"Under paragraph (A) strikes or boycotts, or attempts to induce or encourage such action, are made violations of the act if the purpose is to force an employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of another, or to cease doing business with any other person. Thus, it would not be lawful for a union to engage in a strike against Employer A for the purpose of forcing that employer to cease doing business with Employer B; nor would it be lawful for a union to boycott Employer A because Employer A uses or otherwise deals in the goods of or does business with Employer B (with whom the union has a dispute)."

Appellant says that the purpose of Section 8(b) (4) (A) in connection with Section 10(*l*) was to return to a limited extent to the federal judiciary the jurisdiction to enjoin the classical common law secondary boycott as found in Duplex Printing Press Co. v. Deering, 1921,

254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, which had been removed by the Norris-LaGuardia Act of 1932.[8] Certainly, the effect of Sections 8(b) (4) (A) and 10(*l*) together was to give the remedy of a temporary injunction against secondary boycott.[9] The appellant says that the case at bar does not fall within Section 8(b) (4) (A), as the facts show that the employees of Sline (Sline subcontracted work from Prichard on the Monsanto job), with whom the employees had a dispute, caused the employees of Tampco, Pruit, and Newman to strike on their Monsanto jobs. Appellant says that to support a secondary boycott charge Tampco, Pruit, and Newman must be doing business with Sline (or perhaps with Prichard). We do not understand that the intent of Congress or the effect of the rulings in the three cases cited in footnote 9 was to limit the application of Section 8(b) (4) (A) to cases where a labor group having a dispute with Employer A induces employees of Employer B, with whom the union has no dispute, to strike or boycott, with the result of causing Employer B to cease doing business with Employer A, etc. Section 8(b) (4) (A) of the Act clearly specifies tertiary strikes as well as secondary strikes or boycotts. As we have heretofore remarked, Section 8(b) (4) (A) states that:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(4) to engage in, or to induce or encourage the *employees* of *any employer* to engage in, a strike * * * where an object thereof is: (A) forcing or requiring * * * any *employer or other person* to cease * * * doing business *with any other person* * * *." (Emphasis supplied.)

8. 29 U.S.C.A. §§ 101–115.

9. National Labor Relations Board v. Denver Building Trade Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical

Clearly, the case at bar falls within the prohibition of this section. A "tertiary" boycott was found in the case of International Brotherhood etc. v. National Labor Rel. Bd., 2 Cir., 1950, 181 F.2d 34, affirmed 1951, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299. The Court of Appeals of the Second Circuit stated at 181 F.2d 34, 37:

"The two carpenters quit work because Patterson 'induced' them to do so and they left in 'concert.' They were not guilty themselves of 'an unfair labor practice' it is true, because they were not together a 'labor organization' or 'agents' of such an organization, but Patterson was such an 'agent' and he 'induced' them to refuse 'in the course of their employment * * * to perform * * * services' for Deltorto, Patterson's purpose was to force Giorgi 'to cease doing business with' Langer. *We need not say whether Deltorto, as well as Giorgi, was 'doing business with' Langer; it is enough that the purpose was to put pressure on Giorgi through Deltorto, and that Giorgi was certainly 'doing business with' Langer.* The situation was therefore within § 8(b) (4) (A), unless it makes a difference that Giorgi, upon whom the 'concerted refusal' indirectly impinged, was at work on the same job with Langer with whom the union had its dispute. In short, is a secondary boycott limited to pressure upon third parties who are not engaged in the same venture with the unyielding employer? We can see no basis for such a distinction." (Emphasis supplied.)

See also, National Labor Relations Board v. Local 1976, etc., 9 Cir., 1957, 241 F.2d 147; National Labor Relations Board v. Local 11, etc., 6 Cir., 1957, 242 F.2d 932.

Workers, etc. v. National Labor Relations Board, 1951, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; Local 74, etc., Carpenters Union v. National Labor Relations Board, 1951, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309.

■ (b) The initial charge made by Tampco stated that the respondent induced the employees of Tampco to strike where the object was to force Monsanto to cease doing business with Sline. Appellant says that this charge will not support a Section 8(b) (4) (A) violation since it affirmatively appears that Monsanto was not doing business with Sline. It is true that Monsanto had contracted with Prichard and Prichard had subcontracted some of the work to Sline. But this error in the charge was cured by an allegation in the Board's petition that one of appellant's objects was "to force or require Monsanto and other employers and persons to cease doing business with Sline, unless the latter assigns the work of operating air compressors to employees who are members of or represented by Engineers."

■ (c) Appellant states that the evidence presented to the trial court was not credible and would not support the petitioner's burden of showing that appellant did "induce or encourage" the employees at Texas City to strike. The appellee, to establish a prima facie case, needs not to present uncontradicted testimony[10] and the credibility of the evidence is to be determined by the trier of facts.[11] After a careful examination of the evidence, we hold that the appellee established reasonable cause for the trial court to believe that the appellant "induced or encouraged" the employees.[12] This Circuit stated in National Labor Relations Board v. Robbins Tire & Rubber Co., 5 Cir., 1947, 161 F.2d 798, 800:

"* * * The fact alone, however, of which Respondent makes so much, that Examiner and Board uniformly credited the Board's witnesses and as uniformly discredited those of the Respondent, though the Board's witnesses were few and the Respondent's witnesses were many, would not furnish a basis for a finding by us that such a bias or partiality existed and therefore the hearings were unfair. Unless the credited evidence, as it does not here, carries its own death wound, that is, is incredible and therefore, cannot in law be credited, and the discredited evidence, as it does not here, carries its own irrefutable truth, that is, is of such nature that it cannot in law be discredited, we cannot determine that to credit the one and discredit the other is an evidence of bias. We put aside then crimination and recrimination and address ourselves to the case Petitioner presents, the defense Respondent puts forward."

■ Fifth, appellant argues that the injunction of the trial court is too broad, vague and indefinite and violates all constitutional concepts of due process. The judgment of the trial court enjoins the appellant from:

"(a) In any manner or by any means, including picketing, orders, directions, instructions, requests, appeals, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging the employees of *The Austin Company*, Sline Industrial Painters, Tampco Piping, Inc., A. A. Pruit Company, P. A. Newman and Sons, Armstrong Cork Company, *or of any employer*, to engage in, strike or concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any services, where an object thereof is to force or require the *Austin Company, Dow Chemical Company*, Sline Industrial Painters, *or any employer* to assign any work

10. Douds v. Wood, Wire and Metal Lathers International Ass'n, 3 Cir., 1957, 245 F.2d 223.

11. N.L.R.B. v. Pittsburgh Steamship Co., 1948, 337 U.S. 656, 69 S.Ct. 1283, 93 L. Ed. 1602.

12. See Douds v. Wood, Wire and Metal Lathers Intern. Ass'n, supra, note 3.

to employees who are members of or represented by Local 450, International Union of Operating Engineers, AFL-CIO, rather than to employees who are not members of or not represented by Local 450, International Union of Operating Engineers, AFL-CIO, unless Local 450, International Union of Operating Engineers, AFL-CIO is certified by the Board as the collective bargaining representative for the employees performing such work; or

"(b) In any manner or by any means, including picketing, orders, directions, instructions, requests, appeals, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging employees of Tampco Piping, Inc., A. A. Pruit Company, P. A. Newman and Sons, Armstrong Cork Company, *or of any employer* other than Sline Industrial Painters, to engage in a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any services, where an object thereof is to force or require Monsanto Chemical Company, *or any other employer or person* to cease doing business with Tampco Piping, Inc., A. A. Pruit Company, P. A. Newman and Sons, Armstrong Cork Company or The Prichard Company, or to force or require The Prichard Company, *or any other employer or person* to cease doing business with Sline Industrial Painters." (Italics supplied.)

As we stated earlier in this opinion, the jurisdictional dispute between the appellant and The Austin Company doing work on the Dow job has been determined by the Board, rendering this portion of the appeal moot. Therefore, the part of the judgment quoted is modified by deleting the words "The Austin Company" and "Dow Chemical Company" therefrom. The judgment is further modified by inserting the parenthetical phrase "(subject, however, to any particular contract with such employer)" to follow the words "any employer" appearing in paragraph (a) thereof, just quoted.

Other than such modifications, the judgment will not be disturbed. The petition alleges and the trial court found that the appellant had made "similar jurisdictional demands" and had induced "employees of other employers in the area" to strike, and that "It may fairly be anticipated that, unless restrained, respondent will continue or repeat the acts and conduct set forth" in the findings of fact.[13]

Modified and affirmed.

---

13. See Schauffer v. United Ass'n of Journeymen, 3 Cir., 1955, 218 F.2d 476, 480; N.L.R.B. v. Lummus Co., 5 Cir., 1954, 210 F.2d 377, 381; N.L.R.B. v. United Mine Workers, 3 Cir., 1953, 202 F.2d 177.