Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL NO. 677, INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO, Respondent.

Civ. A. No. 30529.

United States District Court
E. D. Pennsylvania.

Nov. 30, 1961.

Marvin Roth, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, Joseph I. Nachman, Supervising Trial Atty., Washington, D. C., Leonard Leventhal, Regional Atty., Region 4, Philadelphia, Pa., for petitioner.

Abraham L. Friedman, of Rothbard, Harris & Oxfeld, Newark, N. J., Donald F. D'Agui, Philadelphia, Pa., local counsel, for respondent.

JOSEPH S. LORD, III, District Judge.

Respondent has been engaged in a labor dispute with Mack Trucks, Inc., (Mack) and in furtherance thereof has picketed Mack's premises. Mack is presently engaged in what they describe as a million dollar plant reorganization, a relocation of various facilities among its several buildings, and subsequent to the beginning of the picketing had set aside two separate plant entrances for use of the independent contractors and sub-contractors engaged in this work, and by appropriate signs these entrances have been posted as being for use of independent contractors only.

Petitioner is here attempting to enjoin picketing and other interference with the use of these two entrances, such as blocking the entrances with parked cars, under 29 U.S.C.A. § 160(l). The legal theory under which the Board is proceeding is its so-called "reserved gate doctrine", approved by the Supreme Court in the General Electric case, Local 761 International Union of Electric Radio and Machine Workers etc. v. N. L. R. B., 1961, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592.

In opposition to the granting of the injunction, respondent contends firstly, that one of the entrances is not a "gate" within the terms of the General Electric decision, and, secondly, that the work being performed by the independent contractors is work which previously had been performed by bargaining unit employes in Mack's maintenance department, and was, in the words of the Supreme Court, "conventional maintenance work necessary to

the normal operations" of Mack, the picketing of which would not constitute an unfair labor practice subject to injunction.

The entrance in question, that on South Eighth Street, is clearly not a "gate" within the generally accepted usage of that term. Mack buildings are spread over a large geographic area which is not completely surrounded by a fence. More particularly, there is no fence along the South Eighth Street portion of the Mack property. The entrance subject to question is, at best, a dirt road leading from South Eighth Street across a field to one of the Mack buildings. This entrance was apparently never used before the strike. When the strike began Mack placed a wooden post on either side of the road and posted the appropriate signs. This entrance is approximately 500 feet from the nearest regular entrance to plant property. No guard is regularly stationed at the entrance, although according to petitioner's testimony a guard does cover this entrance on his rounds and has a view of the entrance between 10 and 15 minutes out of every hour. Respondent's contention is that the physical layout above described does not meet the standards of a reserved gate, there being no physical gate, fence, chain or similar obstruction, nor is there any guard to prohibit unauthorized entrance. However, respondent's witness testified as to only one occasion of use of this entrance, this by an unidentified vehicle. Petitioner contends that physical facilities are not significant when in fact the use of the entrance is by independent contractors only.

Neither side has offered any authority directly on point but both argue that their positions are sustained by the General Electric case, supra, and by the Phelps Dodge case: United Steel Workers of America, AFL–CIO v. N. L. R. B., 2 Cir., 1961, 289 F.2d 591.

The first question to be answered is, of course, that of the proper function of the District Court in 10(*l*) proceedings where the Board is seeking an injunction based upon a legal proposition on which there is no authority. This Circuit has stated that the Board need not "conclusively show the validity of the propositions of law underlying its charge; it is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous. Retail, Wholesale & Dept. Store Union v. Rains, 5 Cir., 1959, 266 F.2d 503, 505–506; Douds v. Milk Drivers & Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534, 538; Dooley v. Highway Truck Drivers, D.C.Del.1960, 182 F.Supp. 297, 301. The final adjudication of the Board of both questions of fact and law is, of course, ultimately reviewable by this court pursuant to Section 10(e) and Section 10(f) of the N.L.R.A." Schauffler for and on Behalf of N. L. R. B. v. Local 1291, International Longshoremen's Association, C.A. 3, 1961, 292 F.2d 182, 187.

As we read that opinion, the Board is "the primary interpreter of the statutory scheme", a function which should not be usurped by the District Court in determining "novel questions of labor law". Obviously, where, as here, the question of law is "novel", this court perforce does not have the benefit of the Board's, or of any other, opinion. The statutory scheme does not contemplate a definitive decision by the District Court under such circumstances. We must decide only whether the Board's position is reasonable and not frivolous. Here, the Board's legal position may be uncertain when tested by appropriate legal standards (cf. Penello for and on Behalf of N. L. R. B. v. Local Union No. 59, Sheet Metal Workers International Association, D.C. Del., 1961, 195 F.Supp. 458). However, we do not believe it is either unreasonable or frivolous, since the inferences to be drawn from the decided cases do not completely exclude the possibility that the Board's position is correct.

Although the Supeme Court did quote with approval the language of the 2nd Circuit, "there must be a separate *gate* marked and set apart", a separate *entrance* marked and set apart would also appear to be consistent with the reasoning of the 2nd Circuit.

"Pickets at the contractors' gate were not necessary to further the legitimate purposes of the strike against Phelps Dodge. It was not necessary to picket there in order to publicize the dispute to Phelps Dodge's employees and the general public. The contractors' gate was isolated from the one used by the Phelps Dodge employees and from all other gates and from any public thoroughfare. There was ample space where the Union could picket without affecting the contractors' employees. Compare Local 618, supra. Nor was there any need to picket there in order to prevent Phelps Dodge from carrying on the work usually performed by the striking employees, for the Union could picket the gates that Phelps Dodge employees or employees of neutral employers, coming to deliver or pick up the ordinary raw materials and products of the business, would have to use." United Steel Workers of America, AFL-CIO v. N. L. R. B., supra, 289 F.2d at 594.

The same rationale is applicable in the instant case. The absence of a gate does not mean that the union must now sit back and watch anyone other than employes of independent contractors and their sub-contractors, performing the work here involved, go through this entrance: United Steel Workers of America, AFL-CIO v. N. L. R. B., supra, 289 F.2d at 595. If the use of the South Eighth Street entrance is not so restricted, we can always revise or modify our decree upon a proper showing: Evans v. International Typographical Union, et al., D.C.S.D.Ind., 1948, 76 F.Supp. 881, 885; Milk Wagon Drivers Union of Chicago Local 753 v. Meadow-Moor Dairies, Inc., 1941, 312 U.S. 287, 298, 61 S.Ct. 552, 85 L.Ed. 836.

We are impelled to the conclusion therefore that the Board's charges in this respect are not frivolous.

With regard to respondent's contention that the work is normal maintenance rather than, as suggested by Mack, a capital improvement, this we think is primarily an issue of fact and finding as we do that the Board has reasonable grounds for its determination, this court will not review that determination further.

We, therefore, conclude that since the Board's legal position is not frivolous, and its factual position has a reasonable basis, the preliminary injunction should issue. We are of the opinion, and we accordingly find, that the granting of such equitable relief is just and proper.