**Bernard SAMOFF, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL UNION NO. 542–A, –B, –C, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Respondent.**

Civ. No. 8460.

United States District Court
M. D. Pennsylvania.

May 8, 1964.

William J. Davis, N. L. R. B., Philadelphia, Pa., for petitioner.

Freedman, Landy & Lorry, Philadelphia, Pa., J. Julius Levy, Scranton, Pa., for respondent.

NEALON, District Judge.

Bernard Samoff, Regional Director of the Fourth Region of the National Labor Relations Board, filed a petition with this Court pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S. C. § 160(*l*)), seeking injunctive relief against the respondent, Local Union No. 542–A, –B, –C, International Union of Operating Engineers, AFL–CIO, alleging that respondent has engaged, and is engaging in, an unfair labor practice within the meaning of Section 8(b) (7), subparagraph (C) of the Act, which section proscribes certain types of recognition and organizational picketing. The in-

junctive relief being sought is the result of an unfair labor practice having been filed with the Board on March 24, 1964, by District 50 of the United Mine Workers of America. After conducting a preliminary investigation the petitioner concluded that there is reasonable cause to believe that the charge filed by District 50 is true and, accordingly, petitioner seeks a temporary injunction in this Court pending the final disposition of the charges before the Board.

On April 16, 1964, this Court ordered the respondent to show cause why the injunctive relief should not be granted as prayed for in the petition. Respondent filed its answer on April 23, 1964, and hearings were held in this Court on May 4 and May 5, 1964, at which time testimony was taken and exhibits received in evidence.

From the evidence, exhibits and stipulations of the parties, the following facts appear:

Kaminski Brothers, Inc., a Pennsylvania corporation, was formed in 1949 for the purpose of engaging in strip mining in the anthracite coal fields. This Corporation has always been in contractual relationship with District 1 of the United Mine Workers of America and, during its peak, had as high as fifty employees. The Corporation is still functioning in strip mining work and has recently expanded its activity to road construction as will hereinafter appear. In 1962, Kaminski Construction Company, Inc., was formed and was awarded work as a subcontractor on the Pittston Bypass construction job by the Addy Construction Company in the year 1962 and also was awarded a subsequent subcontract by the same company in 1963 for construction work performed at Bear Creek. (Local Union No. 542 employees were used on these assignments.) On April 10, 1962, Kaminski Construction Company, Inc., signed a contract with the respondent Union effective January 1, 1962, and to expire December 31, 1963. This contract contained an automatic renewal clause.[1] Mr. John Kaminski is President of both Kaminski Brothers, Inc., and Kaminski Construction Company, Inc., and both Corporations have the same officers, the same owners (the Kaminski family), the same offices, and use the same equipment. With the exception of the two subcontracting assignments mentioned above, Kaminski Construction Company, Inc., performed no other construction work and since July, 1963, has had no employees on its payroll. On September 12, 1963, Local No. 542 forwarded a letter to Kaminski Construction Company, Inc., notifying it of the Union's desire to meet in order to discuss terms and conditions of a new collective bargaining agreement to replace the contract expiring December 31, 1963.[2]

On January 24, 1964, Kaminski Brothers, Inc., heretofore engaged only in strip mining work, was the successful bidder and awarded a contract to construct four and six-tenths miles of highway on Route 80 in Monroe County, Pennsylvania. Ac-

1. *Section 3.* (Article IX) This Agreement shall continue from year to year unless notice to terminate or to effect a change in any Article herein is given in writing ninety (90) days prior to expiration.

2. "CERTIFIED MAIL
RETURN RECEIPT REQUESTED
"Kaminski Construction Co., Inc.,
September 12, 1963
"378 State Road
"Avoca, Penna.
"Gentlemen:
"In accordance with Article 14, Section 3 of our current Collective Bargaining Agreement for Highway Work in the 29 Counties of Eastern Pennsylvania, you are hereby notified that Local 542 International Union of Operating Engineers desires to meet with you for the purpose of discussing the terms and conditions of a new agreement to replace the above agreement which expires on December 31, 1963.

"We shall be glad to meet with you for discussions at a time and place mutually convenient.
"Very truly yours,
"/s/ Robert Walsh
"Robert Walsh
Business Manager"
"RW:ad

cording to John Kaminski, the bid was made by Kaminski Brothers, Inc., instead of Kaminski Construction Company, Inc., because the latter Corporation was too small to properly bid or to get sufficient bonding for the job. The contract provides for payment of $3,268,000 and allows the contractor 250 working days to complete the project. Although John Kaminski knew on January 24 that the Corporation was the unofficial low bidder, official notice of the award of the contract was not received until approximately two weeks later. In the meantime, on January 26, 1964, Mr. Alfred Cherney, Assistant Regional Director of District 50 of the United Mine Workers of America, met with Mr. Kaminski for the first time and asked him to sign a contract with District 50. Approximately two weeks later, according to Kaminski, Cherney approached him again and he referred Cherney to counsel for the Corporation, Attorney Christopher Powell. Subsequently, on February 19, Cherney called Kaminski and said he had worked out an agreement with Attorney Powell and on that day Powell and Cherney met with Kaminski in the Corporation office and Kaminski signed a document captioned "Authorization to Pennsylvania Heavy & Highway Contractors Bargaining Committee" which, in essence, authorized this bargaining committee to represent the Corporation and conclude contracts on its behalf with District 50, as well as assuming the obligations of the current agreement between the bargaining committee and District 50. It was Mr. Cherney who presented the authorization form to Kaminski for signature, although Kaminski had no prior association, understanding or contact with the bargaining committee. Cherney produced a copy of the contract between the bargaining committee and District 50 and turned it over to Kaminski, pointing out that Kaminski had to abide by its terms. On or about March 5, 1964, Mr. Frank Priscopo, Business Representative for Local No. 542, contacted the Corporation office relative to a collective bargaining agreement. On March 9, Kaminski commenced moving the equipment to the job in Monroe County, using seven or eight men initially, all of whom were employees from his strip mining operation. On March 11, Priscopo met with Kaminski and asked him to sign a contract with the Operating Engineers, whereupon Kaminski replied "You're too late. We already signed one with District 50." Priscopo asserted to Kaminski that he didn't know that there were several "Kaminski Corporations" and had he known that there were he would have signed all the companies. The following day six or seven pickets appeared in front of the office of the respective Corporations, positioning themselves on a secondary road approximately 200 to 250 feet from the building. This secondary road leads to a settlement called New Boston, where it reaches a dead end on Kaminski property at a point where a stone quarry owned by another Kaminski Corporation is located. The signs being carried by the pickets read: "Kaminski Brothers and Kaminski Construction Company unfair to Local 542, Operating Engineers." Later that day a meeting was held at which Kaminski, Attorney Powell, Cherney, Priscopo and a Mr. Coslett, of Local 542, were all present and Priscopo once again informed Kaminski "We are interested in a contract." When Kaminski refused to discuss a contract, picketing was resumed at the Corporation office and on March 24 or 25, picketing was extended to the highway job in Monroe County and the pickets carried signs using the same language as was being used on the cards in front of the office building. Thereafter, on April 15 or April 20, the signs were changed to read: "Kaminski refused to renew contract with Operating Engineers and has signed contract with District 50 to break Engineers picket line. District 50 is taking jobs from the Operating Engineers and working with employer against trade union movement." Since March 12, trucks from Coca Cola Company; Stipp Construction Company, Addy Asphalt Company; Highway Express, Inc.;

Yankee Lines, Inc.; Central Clay Products; and Mitchell Welding Company have refused to cross the picket line, thereby interrupting the normal deliveries to the Corporation. Moreover, Hudillie Construction Materials, Inc., could not fulfill Kaminski's order for ready-mix concrete inasmuch as the drivers would not cross the picket line, thereby preventing the Corporation from completing a vital part of its work, viz., erecting concrete bridges.

As previously mentioned, District 50 then filed unfair labor practice charges with the Board on March 24, 1964, and the present petition seeking injunctive relief pending disposition of these charges was filed on April 15, 1964. Thereafter, on April 21, 1964, respondent filed a charge with the Board contending that Kaminski Brothers, Inc., inter alia, had violated Section 8(a) (2) of the Act, thereby precluding injunctive relief under Section 10(*l*).[3] This charge was dismissed on May 1, 1964, for the reason that the Regional Director did not have reasonable cause to believe that such charge was true and that a complaint should issue. Respondent has announced its intention to appeal this decision to the General Counsel of the Board as provided for in the Rules and Regulations of the Board.[4]

It is conceded that the jurisdictional prerequisites to Board action are present; that respondent has not been officially certified by the Board as bargaining representative for Kaminski Brothers, Inc., and that respondent has not filed a petition for a Board election within the required thirty days as provided for under Section 8(b) (7) (C) of the Act.

From this factual background, petitioner has concluded that respondent has engaged in unfair labor practices within the meaning of Section 8(b) (7) subparagraph (C) of the Act.[5]

3. With reference to this contention, Section 10(*l*) provides, in pertinent part:
" * * * such officer or regional attorney shall not apply for any restraining order under Section 8(b) (7) if a charge against the employer under Section 8(a) (2) has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue. * * *"

4. Sec. 102.19 "Review by the general counsel of refusal to issue.—If, after the charge has been filed, the regional director declines to issue a complaint, he shall so advise the parties in writing, accompanied by a simple statement of the procedural or other grounds. The person making the charge may obtain a review of such action by filing a request therefor with the general counsel in Washington, D. C., and filing a copy of the request with the regional director, within 10 days from the service of the notice of such refusal by the regional director. The request shall contain a complete statement setting forth the facts and reasons upon which the request is based."

5. Sec. 8(b) "It shall be an unfair labor practice for a labor organization or its agents—
    * * * * *

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:
    * * * * *
"(C) where such picketing has been conducted without a petition under Section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, that when such a petition has been filed the Board shall forthwith, without regard to the provisions of Section 9(c) (1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, that nothing in this sub-paragraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor

It is petitioner's position that the only issue before this Court is whether petitioner has reasonable cause to believe that an unfair labor practice is being committed by respondent and, once reasonable cause has been established, the Court should grant temporary injunctive relief in accordance with the Congressional policy underlying the Act. Consequently, petitioner insists, a temporary injunction should be granted because the evidence discloses that Local No. 542 sought to be recognized as bargining representative of Kaminski Brothers, Inc., by Priscopo's oral demands on March 11 and March 12, followed by picketing with placards which unequivocally stated that Kaminski Brothers, Inc., and Kaminski Construction Company, Inc., were unfair to Local 542, obviously indicating a demand for recognition as defined in Section 8(b)(7) and not merely informational picketing. Such conduct, according to petitioner, is enjoinable inasmuch as a petition for an election was not filed within a thirty-day period as required by Section 8(b)(7), subparagraph (C). Moreover, petitioner alleges that respondent's picketing must be restrained because an effect of such picketing has been to induce truckers, concrete mixers and others, in the course of their employment, not to pick up, deliver or transport any goods.

If this Court is confined to a determination as to whether or not the petitioner has reasonable cause to believe that an unfair labor practice is being committed, then petitioner has carried his burden and is entitled to injunctive relief. Respondent challenges the petitioner's contention that this Court is so limited and asks the Court to find that a collective bargaining contract exists betwen respondent and the employer, thereby precluding the relief sought by petitioner. Specifically, it is the respondent's position " * * * that a collective bargaining agreement exists between Kaminski and respondent; that

it was breached by Kaminski, and that respondent had the right to and was picketing for informational purposes, to inform the public of these facts." At the root of respondent's argument is the allegation that the letter of September 12, 1963, from Local No. 542 to Kaminski Construction Company, Inc., was not a notice of termination, but merely an indication of a desire to discuss a new contract and that, consequently, the old contract did not expire on December 31, 1963, but automatically renewed itself, and because Kaminski Brothers, Inc., and Kaminski Construction Company, Inc., are a single entity for purposes of labor relations, both are bound under the renewal.

In Schauffler for and on Behalf of N. L. R. B. v. Local 1291, International Longshoremen's Association, 292 F.2d 182 (3d Cir. 1961), the role of a District Court in a 10(*l*) proceeding was discussed at some length. Chief Judge Biggs, speaking for the Court, explained that

" * * * The Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present. Nor need the Board conclusively show the validity of the propositions of law underlying its charge; it is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous. Retail, Wholesale & Dept. Store Union v. Rains, 5 Cir., 1959, 266 F.2d 503, 505–506; Douds v. Milk Drivers & Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534, 538; Dooley v. Highway Truck Drivers, D.C.Del.1960, 182 F.Supp. 297, 301. The final adjudication of the Board of both questions of fact and law is, of course, ultimately reviewable by this court.

organization, unless an effect of such picketing is to induce any individual employed by any other person in the course

of his employment, not to pick up, deliver or transport any goods or not to perform any services."

pursuant to Section 10(e) and Section 10(f) of the N.L.R.A."

In that case a legal question concerning the interpretation of the collective bargaining agreement was squarely placed before the lower Court. The Board had charged respondent union with an unfair labor practice within the meaning of Section 8(b) (4), subparagraph (D), of the Act, which section proscribes so-called jurisdictional disputes. The respondent union contended that it was justified in demanding that certain work be assigned to its members and not to members of another local union inasmuch as it was entitled to the work demanded by reason of a specific paragraph in its collective bargaining contract. The lower Court refused to decide the legal issue stating " * * * Whether or not this be so, it is an issue which must be resolved by the Board in the proceeding before it and not by this Court." 188 F.Supp. 203 (E.D.Pa.1960). In affirming the trial Court, this Circuit declared:

" * * * It is apparent that many questions of fact and of law would have had to have been resolved by the court below before it could have determined the precise effect of the PMTA-ILA contact and the June 21, 1960 grievance proceeding on the present controversy. At least some of these questions must be recognized to be other than frivolous in nature. If, in a Section 10(l) proceeding, a district court or a court of appeals undertook to finally adjudicate such questions it would not be acting consistently with the congressional policy underlying Section 10(l). That Section's usefulness as a tool with which the status quo may be preserved pending final adjudication would be diminished insofar as the Board would be required to finally litigate questions of substance at a preliminary stage. Moreover, the court would not have the benefit of the Board's opinion on questions of fact and novel questions of labor law when making its decision. Thus, the court would, to some extent, usurp the Board's function as the primary fact finder in cases arising under the Act and its function as primary interpreter of the statutory scheme. We are of the opinion, therefore, that the issue of the effect of the contract as interpreted by the grievance committee was properly left to the Board by the court below and that the existence of this issue cannot be held by this court to render the district court's finding of reasonable cause clearly erroneous. See Retail, Wholesale & Dept. Store Union v. Rains, 5 Cir., 1959, 266 F.2d 503; Douds v. International Longshoremen's Ass'n, 2 Cir., 1957, 242 F.2d 808, 810–811; Douds v. Milk Drivers & Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534."

The function of this Court in 10(l) proceedings was likewise outlined in Schauffler v. Highway Truck Drivers and Helpers, 230 F.2d 7 (3d Cir. 1956), as follows:

"It is to be observed that section 10(l), under which the issuing of a preliminary injunction is authorized, requires the district judge to find that there is reasonable cause to believe that a violation of the act as charged has been committed. * * * This puts a lighter burden on both the district judge and ourselves than if final findings of ultimate fact were required. That task is, of course, for the labor relations board subject to review by this Court if and when enforcement is sought here." (Emphasis supplied)

More recently Judge Joseph S. Lord, in the Eastern District of Pennsylvania, was confronted with a "legal proposition" in a 10(l) proceeding and his conclusion is enlightening:

" * * * The statutory scheme does not contemplate a definitive decision by the District Court under such circumstances. We must decide only whether the Board's position is reasonable and not frivolous. Here,

the Board's legal position may be uncertain when tested by appropriate legal standards (cf. Penello for and on Behalf of N. L. R. B. v. Local Union No. 59, Sheet Metal Workers International Association, D.C.Del. 1961, 195 F.Supp. 458). However, we do not believe it is either unreasonable or frivolous, since the inferences to be drawn from the decided cases do not completely exclude the possibility that the Board's position is correct." Schauffler for and on Behalf of N. L. R. B. v. Local No. 677, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL-CIO, 201 F.Supp. 637 (E.D.Pa. 1961).

Moreover, counsel for the respondent pointed out the unique legal question involved in his brief herein and stated:

"Under the general law of contracts, either party may terminate the contract as provided therein and such termination effectively puts an end to the relationship and to any obligations thereunder. Indeed, either party may just walk away from the contract upon its termination. Such is not the case where a collective bargaining agreement is involved. For, a *relationship* has been created, and continuing rights and obligations persist. This is necessary to stabilize industry and protect both labor and management."

Obviously, if a collective bargaining contract presents such "novel questions of labor law" as mentioned in Local 1291 (supra), then its interpretation should be made by the Board as the primary interpreter of the statutory scheme. In any event, we cannot conclude that the Board's finding that the April 10, 1962, contract expired on December 31, 1963, is either unreasonable or frivolous.

While there are many facets of this case that appear peculiar to the Court, such as the incident where Mr. Cherney, the District 50 representative, presented a form to Kaminski for signature in which the Pennsylvania Heavy & Highway Contractors Bargaining Committee, an employers' group, was designated to represent Kaminski and conclude contracts on his behalf with District 50, plus Cherney's statement that he carries these forms with him when he approaches contractors in his district. In addition, the respondent has charged Kaminski and District 50 with a collusive scheme to eliminate Local No. 542 and its members from Kaminski projects by injecting Kaminski Brothers, Inc., into the highway construction industry in place of Kaminski Construction Company, Inc., a co-contractor with Local No. 542 under the agreement of April 10, 1962. Also the respondent's interesting argument that an uncommon kinship exists between employer and union in the construction industry, where employment is casual and intermittent, which gives rise to a relationship that must persist beyond the normal expiration of the contract and which places greater duties and obligations on both employer and union to protect and safeguard the interests of the employees. There are many significant questions and issues that must be resolved in this case, but I am convinced that Congress has designated the National Labor Relations Board and not this Court as the forum for their initial resolution.

For the purposes of this proceeding, we hold that the petitioner has demonstrated that there is reasonable cause to believe that the elements of an unfair labor practice are present and that the propositions of law which have been applied to the charge are substantial and not frivolous. Therefore, after carefully considering all the circumstances, we conclude that equitable relief is just and proper.